ATC PARTNERSHIP *v.* TOWN OF WINDHAM ET AL.
(AC 21325)

Mihalakos, Flynn and Shea, Js.

Argued November 30, 2001—officially released August 6, 2002

*Richard P. Weinstein*, with whom was *Nathan A. Schatz*, for the appellant (plaintiff).

*Richard S. Cody*, town counsel, with whom were *Lisa Silvestri* and, on the brief, *Jason Westcott*, for the appellees (defendants).

*Opinion*

SHEA, J. The plaintiff, ATC Partnership, appeals from the judgment of the trial court in favor of the defendants[1] in an action of replevin to regain possession of certain machinery and equipment. The plaintiff claims that the court improperly (1) concluded that the plaintiff's property was not wrongfully detained because the defendant town of Windham (town) seized that property pursuant to an alias tax warrant, (2) concluded that the replevin action was barred by the doctrine of sovereign immunity and (3) concluded that because the subject property was fixtures, the plaintiff could not

---

[1] In addition to the defendant town of Windham, Northeast CT Economic Alliance, Inc., and Windham Mills Development Corporation are defendants and are parties in this appeal.

maintain an action of replevin pursuant to General Statutes § 52-515.[2] In its action of replevin, in which the plaintiff also relied on the common-law doctrine of conversion, the plaintiff claimed that it is the rightful owner of the machinery, furnishings, equipment and other personal property contained in several factory buildings constituting the former American Thread Company (American Thread) complex in Willimantic. The plaintiff's claim of ownership arises from its purchase in 1987 of the forty acres on which are situated the buildings containing the personal property claimed by the plaintiff as the rightful owner.

The amended revised complaint alleges that the plaintiff is a general partnership with a place of business in New Haven and is the owner of certain personal property located at the former American Thread complex in Willimantic. It alleges further that the town, acting through the defendant Northeast CT Economic Alliance, Inc. (Northeast), condemned the real estate owned by the plaintiff on or about August 12, 1994, with a certificate of taking filed on or about September 9, 1994, and that, located in the premises taken through the condemnation proceeding, was personal property as set forth in schedule A attached to the complaint. The complaint alleges that Northeast conveyed the real property to the defendant Windham Mills Development Corporation (Windham Mills), that one or more of the defendants are directly or indirectly in possession of or in control of the personal property and that there may be a claim that Windham Mills is, in fact, in possession of the personal property described in schedule A attached to the complaint.

---

[2] General Statutes § 52-515 provides: "The action of replevin may be maintained to recover any goods or chattels in which the plaintiff has a general or special property interest with a right to immediate possession and which are wrongfully detained from him in any manner, together with the damages for such wrongful detention."

The complaint further alleges that the defendants are wrongfully detaining the plaintiff's property, and have failed, neglected and refused to return it to the plaintiff, all to the plaintiff's special loss and damage, and have prevented the plaintiff from removing it from the real estate. It is alleged further that the plaintiff is the lawful owner of the personal property over which the defendants have maintained possession and that the plaintiff has the right to immediate possession of the personal property.

The court, in its memorandum of decision filed September 29, 2000, characterized the plaintiff's revised complaint as a replevin action. General Statutes § 52-515 provides: "The action of replevin may be maintained to recover any goods or chattels in which the plaintiff has a general or special property interest with a right to immediate possession and which are wrongfully detained from him in any manner, together with the damages for such wrongful detention." The memorandum of decision notes that "[p]rior to the filing of the plaintiff's complaint on December 19, 1994, the town had commenced an action for injunctive relief against [the plaintiff] on May 19, 1994, in which it alleged that although the parties had agreed to cooperate in order to obtain financial assistance from the state for the rehabilitation and redevelopment of the American Thread mill complex, [the plaintiff] had 'breached the agreement by removing and continuing to remove valuable and historic property from the complex.'" The court file also contains a letter from counsel for the plaintiff dated May 19, 1994, stating that his clients had not removed anything from the premises, have no immediate plans to do so and that without a court order, his clients agree not to remove any contents until there is a hearing in regard to the matter. Although a hearing was scheduled for October 6, 1994, the injunction action was withdrawn by the town on September 29, 1994.

The court, consequently, had no occasion to decide the issues raised by the town's claim that the plaintiff had breached the agreement to cooperate and had removed some property from the former American Thread complex.

I

On May 18, 1994, the tax collector for the town issued an alias tax warrant pursuant to General Statutes (Rev. to 1993) § 12-162. Section 12-162 provides in relevant part that "[u]pon the nonpayment of any property tax when due, demand having been made therefor as prescribed by law for the collection of such tax, an alias tax warrant may be issued by the tax collector, which may be in the following form: 'To the Sheriff of the County of [Tolland], his deputy or any constable of the Town of [Windham] within said county, Greeting: By authority of the state of Connecticut you are hereby commanded to collect forthwith from [ATC Partnership] of [New Haven] the sum of . . . . dollars, the same being the amount of a tax with interest or penalty and charges which have accumulated thereon, which tax was levied by [the town of Windham] upon [the personal property] of said [ATC Partnership] as of the . . . . day of . . . . . In default of payment of said amount you are hereby commanded to levy for said tax or taxes, including interest, penalty and charges, hereinafter referred to as the amount due on such execution, upon any goods and chattels of such person and dispose of the same as the law directs . . . and, after having satisfied the amount due on such execution, return the surplus, if any, to him; or you are to levy upon the real estate of such person and sell enough thereof to pay the amount due on such execution and give to the purchaser a deed thereof; or you shall make demand upon the main office of any banking institution indebted to such person, subject to the provisions of section 52-367a, as if judgment for the amount due on such execution had

been entered, for that portion of any type of deposit to the credit of or property held for such person, not exceeding in total value the amount due on such execution; or you are to garnishee the wages due such person from any employer, in the same manner as if a wage execution therefor had been entered, in accordance with section 52-361a.' "

In its memorandum of decision, the court notes that the alias tax warrant issued by the tax collector expressly states that its purpose was " 'to protect fixtures and other material of historic value.' " No provision of § 12-162 or any other statute authorizes the use of such a warrant for that purpose. At trial, David Page, then a Windham County deputy sheriff, identified the tax warrant that he had served at the direction of the tax collector for the town, and testified that the tax collector had told him that the town was concerned about the machinery and equipment being taken out of the mill complex, and that she had directed him to seize the property "in lieu of taxes" and to prevent the property from being removed from the premises. Page testified that he did nothing except to secure and to protect the property, and to post a public notice of the seizure, and that he did not make a final return of service until March 31, 1997. The court made no finding of whether any taxes were owed to the town by the plaintiff, let alone the amount thereof, and also overlooked the absence of any statutory provision allowing an alias tax warrant to be used " 'to protect fixtures and other material of historic value.' "

The last sentence of § 12-162, authorizing a levy on any goods and chattels of the plaintiff and disposing of the same as the law directs, and, after satisfying the amount due on such execution, directing that any surplus be returned to the plaintiff, has been totally ignored. No finding has yet been made of the amount of delinquent taxes claimed to be owed to the town by

the plaintiff. Nevertheless, the court concluded that the doctrine of sovereign or governmental immunity barred the plaintiff from pursuing the statutory remedy of replevin and that equitable relief should also be denied "based upon considerations of public policy because it would interrupt the collection of taxes, one of the most important attributes of the sovereign power [and] one of its most vital functions." See *Arnold* v. *Middletown*, 39 Conn. 401, 406 (1872).

We conclude that the requirements of § 12-162 concerning the procedure to be followed in collecting taxes claimed by a town to be delinquent cannot be disregarded so cavalierly. Sovereign immunity cannot be invoked to justify conduct that violates a statute of this state, such as the failure of the town to follow the procedures prescribed by § 12-162 for collecting delinquent taxes and its use of an alias tax warrant to seize the plaintiff's property for purposes other than the collection of such taxes. Accordingly, we reverse the judgment of the trial court, which held that the plaintiff's action was barred by the doctrine of sovereign immunity.

II

In addition to its misplaced reliance on the doctrine of sovereign immunity, the court also held that the items the plaintiff claimed as its property, which were housed in the American Thread factory buildings, were fixtures and, therefore, were not "goods or chattels" in which the plaintiff has a general or special property interest as required by § 52-515 for a statutory action of replevin. It appears that the court wholly ignored the plaintiff's claim of ownership of the machinery and other contents of the former American Thread complex, although it never made any determination that the town, which never asserted such a claim, was the rightful owner.

The assumption of the court that because much of the personal property claimed by the plaintiff as the rightful owner was affixed or fastened to the floors or walls of the buildings, that that property constituted fixtures that had become part of the real estate the town had acquired in the condemnation proceeding, is unsupported by anything in the record concerning the condemnation proceeding. The plaintiff could not have lost its rights as owner of the machinery and other personal property in the buildings unless the record of the condemnation proceeding reasonably would support such a conclusion. We note, again, that the town has not asserted any such claim. Accordingly, we reverse the judgment of the trial court with respect to that issue.

## III

The basis for the plaintiff's claim of ownership of the contents of the buildings comprising the former American Thread complex is its purchase, in 1987, of a parcel in the town consisting of about forty acres with the buildings thereon, which had been owned and operated as a textile mill for many years by American Thread for the manufacture of thread, yarn and string products until the company terminated its manufacturing operations at that site in 1985. On December 5, 1985, American Thread sold the property to Eastern Connecticut Industrial Park Associates (Eastern), which sold the property to the plaintiff in 1987 for $2.7 million. The machinery that had been used by American Thread, most of which was fastened to the floors of the buildings, as well as the tools, conveyer belts, workbenches and other furnishings used in manufacturing thread and yarn became the property of Eastern and ultimately became the property of the plaintiff when it purchased from Eastern the forty acre parcel with the buildings and their contents thereon. No manufacturing or other business or commercial activity was conducted

on the site by the plaintiff or anyone else while the plaintiff owned the property.

On September 9, 1994, Northeast, acting as the statutory implementing agency and condemning authority for the town, filed a certificate of taking by eminent domain for the forty acres comprising the former American Thread complex and awarded the plaintiff $1 as compensation for the property it had purchased from Eastern in 1987 for $2.7 million. The plaintiff, not surprisingly, appealed from the statement of compensation, and a hearing was conducted before the court to determine the fair market value of the property taken. After a lengthy hearing at which several appraisers testified, the court concluded that the fair market value of the property taken was $1.675 million and, accordingly, rendered judgment for the plaintiff to recover that amount from the town.

The record clearly supports the plaintiff's claim of ownership of the machinery and other contents of the former American Thread complex, which were included in its purchase of the forty acres from Eastern in 1987. The defendant town, however, has not presented any basis to support a claim of ownership of the contents of those buildings. In fact, it has not asserted any such claim of ownership and apparently relies on its possession of the contents to justify its refusal to permit the plaintiff to remove its claimed property from the buildings. The value of the contents of the former American Thread complex never was considered during the condemnation proceeding in which both the plaintiff and the town participated.

We conclude that the judgment of the court must be reversed. That judgment leaves the plaintiff, which is the undisputed owner of the contents of the buildings, without any recourse for recovering its property, which now is held in the possession of the town, which never

in the course of this litigation has even claimed any ownership interest in that property. Possession is not equivalent to legal ownership. The court, apparently, assumed that the machinery and other equipment in the former American Thread complex were fixtures and thus had become part of the real estate that the town had acquired in the condemnation proceeding. That conclusion, however, ignores the plaintiff's interest as owner of the contents of the buildings.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.