ATC PARTNERSHIP *v.* TOWN OF WINDHAM ET AL.
(SC 16858)
(SC 16859)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued December 1, 2003—officially released April 20, 2004

*Linda L. Morkan*, with whom were *Patrick J. Sweeney, Lisa Silvestri* and, on the brief, *Richard S. Cody*, for the appellants (defendants).

*Richard P. Weinstein*, with whom was *Nathan A. Schatz*, for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The defendants[1] appeal, following our grants of certification,[2] from the judgment of the Appel-

---

[1] The defendants are the town of Windham (Windham), Windham Mills Development Corporation (Windham Mills), and Northeast Ct. Economic Alliance, Inc. (Northeast).

[2] We granted Windham's petition for certification to appeal, limited to the following issues: "Did the Appellate Court properly conclude that: (1) [Windham] in proceeding, pursuant to General Statutes § 12-162, was not protected by the doctrine of governmental immunity pursuant to General Statutes § 52-557n; (2) there was insufficient evidence to support the trial

late Court reversing the trial court's judgment, which was rendered after a bench trial, in favor of the defendants. The defendants claim that the Appellate Court improperly concluded that there was insufficient evidence in the record to support the trial court's determination that the plaintiff could not maintain an action for statutory replevin, brought pursuant to General Statutes § 52-515,[3] because the plaintiff was seeking to recover property properly characterized as fixtures and the

court's findings that the items in question were not fixtures; and (3) there was no finding or evidence of a tax liability to [Windham] by the plaintiff?" *ATC Partnership* v. *Windham*, 262 Conn. 901, 810 A.2d 268 (2002). Thereafter, we granted Windham Mills' and Northeast's petition for certification to appeal raising the same issues; *ATC Partnership* v. *Windham*, 262 Conn. 901, 810 A.2d 268 (2002); and consolidated the appeals.

We note that this court's orders granting the petitions for certification to appeal incorrectly stated that the trial court found that the items in question *were not* fixtures, when, in fact, the trial court actually found that the items in question *were* fixtures. We also note that in their briefs and arguments, the parties appropriately addressed the correct issue: whether the Appellate Court properly concluded that there was insufficient evidence to support the trial court's findings that the items in question *were* fixtures.

Despite the order in which these issues were presented in our grants of certification to appeal, we have determined that the appropriate progression of inquiry requires that we deal first with the defendants' second claim. As we explain more fully in the text of this opinion, this second claim concerns the legal sufficiency of the plaintiff's cause of action. Logically, this claim presents a threshold issue that necessarily precedes analysis of both the defendants' first claim, regarding the applicability of a special *defense* to the plaintiff's cause of action, and their third claim, which deals with the merits of the plaintiff's replevin action in contending that the defendants' actions were justified by law and, therefore, their detention of the plaintiff's property was not wrongful. Having constructed the proper framework of analysis, because we conclude that the Appellate Court improperly determined there to be insufficient support in the record for the trial court's finding that the pieces of property at issue were fixtures, and we therefore agree with the defendants as to their second claim, we need not reach either the first or third claims as presented in the defendants' petitions for certification to appeal.

[3] General Statutes § 52-515 provides: "The action of replevin may be maintained to recover any goods or chattels in which the plaintiff has a general or special property interest with a right to immediate possession and which are wrongfully detained from him in any manner, together with the damages for such wrongful detention."

scope of the replevin statute expressly is limited to actions seeking to recover "goods or chattels." We agree with the defendants and, accordingly, we reverse the judgment of the Appellate Court.

The plaintiff, ATC Partnership, commenced this action with the filing of a writ of replevin that alleged that the defendants wrongfully had detained, and continued to possess, certain property belonging to the plaintiff, and that the plaintiff was entitled to the immediate return of its property.[4] Following a bench trial,

---

[4] On appeal, the plaintiff consistently has characterized its complaint as sounding in both statutory replevin and common-law conversion. Indeed, following our grants of certification to appeal in this matter, the plaintiff raised, as an alternate ground on which the judgment of the Appellate Court may be affirmed, the claim that, regardless as to whether the pieces of property underlying the plaintiff's claim are to be categorized as fixtures, thereby precluding an action in replevin pursuant to § 52-515, the plaintiff's conversion action nevertheless survives because that common-law tort is not limited to actions involving "goods or chattels . . . ." In its opinion, the Appellate Court apparently also considered the plaintiff's action to have been brought under both replevin and conversion theories. *ATC Partnership* v. *Windham*, 71 Conn. App. 438, 440, 802 A.2d 210 (2002) ("[i]n [the plaintiff's] action of replevin, in which the plaintiff also relied on the common-law doctrine of conversion").

In Connecticut, we long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, "[t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Citation omitted; internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 265 Conn. 79, 104, 828 A.2d 31 (2003). Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension.

Based upon our review of the pleadings and relevant case history in this matter, we conclude that the plaintiff, although initially bringing an action in the nature of both replevin and conversion claims, subsequently amended its complaint to abandon the claim of conversion against the defendants. We briefly review the relevant procedural history that leads to this conclusion.

In the plaintiff's initial writ of replevin, filed on December 13, 1994, allegations of both replevin and conversion were advanced explicitly. The com-

the court, *Hon. Harry Hammer*, judge trial referee,

plaint alleged that "[t]he plaintiff has the right to immediate possession of said personal property, and the defendants' retention of same constitutes conversion, all to the special loss and damage to the plaintiff . . . ." Further, this complaint requested relief appropriate for both a replevin and a conversion action. It stated that "the plaintiff [requests] . . . [a]n order requiring the defendants to return [the plaintiff's] property . . . [and] [d]amages for conversion . . . ."

Thereafter, the defendants filed a request to revise the plaintiff's complaint. Specifically, the defendants requested that the plaintiff "revise the complaint by deleting . . . the words 'and the defendant[s'] retention of [the plaintiff's property] constitutes conversion . . . . The reason for this request is that the complaint is titled 'Writ of Replevy' and is phrased as a replevin action that seeks return of specified property items. Conversion and replevin are distinct actions at law . . . . In the alternative, please delete the language as mentioned above and break out a separate count stating a cause of action for conversion."

In response to the defendants' request, the plaintiff filed a revised complaint dated February 7, 1995. This amended complaint was identical to its predecessor in all material respects except that the plaintiff had deleted the language regarding conversion referenced in the defendants' request to revise, and the amended complaint did not, as the defendants alternatively had suggested, reinsert the language in a separate conversion count. Moreover, in the plaintiff's request for relief, this amended complaint also was redacted to exclude the plaintiff's prior specific claim requesting "damages for conversion." We can perceive of no reasonable explanation, and the plaintiff has offered none, for this procedural progression other than that the plaintiff had elected to proceed against the defendants solely upon a claim sounding in replevin.

We are mindful that both the plaintiff's initial complaint and its complaint as amended requested relief in the form of "damages." In addition, in its brief to this court, the plaintiff advanced its purported conversion claim thusly: "Here, the plaintiff sought damages for the conversion of its machinery and equipment by the [defendants]." It therefore would appear that the plaintiff, in claiming that its conversion claim survived amendment of its complaint, principally relies upon the fact that the plaintiff has continued to request relief in the form of monetary damages from the defendants. Although it is accurate to state generally that an action in conversion primarily is concerned with the recovery of monetary damages while a replevin action's traditional focus is upon the physical return of property wrongfully detained, our replevin statute, § 52-515, also expressly allows for the recovery of damages associated with the wrongful detention of property. See *Staub* v. *Anderson*, 152 Conn. 694, 695, 211 A.2d 691 (1965) (depreciation in value of property wrongfully detained is proper element of replevin damages); accord *Faulkner* v. *Marineland, Inc.*, 18 Conn. App. 1, 2, 555 A.2d 1001 (1989); see also *Commercial Credit Corp.* v. *Miron*, 108 Conn. 524,

rendered judgment in favor of the defendants. The plaintiff thereafter appealed from this judgment to the Appellate Court, which reversed the judgment of the trial court. *ATC Partnership* v. *Windham*, 71 Conn. App. 438, 447, 802 A.2d 210 (2002). This certified appeal followed.

This matter arises out of a protracted and contentious series of disputes between these parties involving a forty acre parcel of land located in Windham.[5] The fol-

526, 143 A. 846 (1928) (damages for loss of use of property during wrongful detention is proper element of replevin damages). Consequently, the mere request for relief in the form of monetary damages does not demonstrate that the plaintiff's complaint as amended properly alleged a conversion claim.

Our conclusion that the plaintiff's conversion claim has been abandoned is buttressed further by the memorandum of decision issued by the trial court. In describing the plaintiff's claim, the trial court began by stating that "[t]he plaintiff . . . has brought this *replevin* action . . . ." (Emphasis added.) The trial court's memorandum of decision never references a conversion claim advanced by the plaintiff, but rather treats the matter solely as a replevin action. We also note that, following this memorandum of decision, the plaintiff filed a motion for articulation. This motion, although referring to the action as a "replevin/conversion" claim, did not raise the matter of the trial court's complete lack of treatment of a conversion claim in its memorandum of decision. This failure to raise the issue reinforces the conclusion that the conversion claim was abandoned by the plaintiff. On this record, we therefore conclude that the plaintiff's conversion claim had been abandoned at the trial court level and the plaintiff's replevin claim is the sole issue remaining on appeal.

[5] By way of general background, in 1987, the plaintiff purchased the parcel of land underlying these disputes, which was previously used by the American Thread Company (American Thread) for the operation of a textile mill. The plaintiff's acquisition included not only the realty, but also several buildings situated on the land and the contents of those buildings, which consisted primarily of machinery and equipment previously used in the operation of the mill. With no intent to revive mill operations, the plaintiff thereafter entered into a cooperative relationship with Windham and Northeast in order to secure governmental funding, pursuant to the Economic Development and Manufacturing Assistance Act of 1990; General Statutes §§ 32-220 through 32-234; for the rehabilitation and redevelopment of the land. *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 256 Conn. 813, 817–18, 776 A.2d 1068 (2001). "In December, 1993, this effort culminated in the publication and submission to the department of economic and community development of a lengthy, comprehensive economic development plan entitled 'Windham Mills and Windham State Heritage Park Master Action Plan.' " Id., 818. In summary, this plan proposed the phased redevelop-

lowing facts, as set forth in the opinion of the Appellate Court, guide our resolution of this appeal. "The amended revised complaint alleges that the plaintiff . . . is the owner of certain personal property located at the former American Thread complex in Willimantic. It alleges further that [Windham], acting through [Northeast], condemned the real estate owned by the plaintiff on or about August 12, 1994, with a certificate of taking filed on or about September 9, 1994, and that, located in the premises taken through the condemnation proceeding, was personal property as set forth in schedule A attached to the complaint. The complaint alleges that Northeast conveyed the real property to [Windham Mills], that one or more of the defendants are directly or indirectly in possession of or in control of the personal

ment of the site to convert to modern light industrial use while also appropriately accommodating the site's status as a historic landmark and potential tourist attraction.

This cooperative relationship, however, subsequently soured, resulting in Windham's taking, through its agent, Northeast, of the plaintiff's land through eminent domain as well as several related litigated disputes involving the plaintiff, Windham, Northeast and the current owner of the property, Windham Mills. In addition to this appeal, this court already twice has dealt with matters arising from these disputes. In *ATC Partnership* v. *Windham*, 251 Conn. 597, 598–99, 741 A.2d 305 (1999), cert. denied, 530 U.S. 1214, 120 S. Ct. 2217, 147 L. Ed. 2d 249 (2002), we rejected the plaintiff's attempt to fashion a constitutional tort remedy, pursuant to the substantive due process guarantees contained in the federal and state constitutions, from an allegation that the defendants improperly had condemned the plaintiff's property in order to usurp the economic opportunity presented by the redevelopment of the property. Thereafter, in *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, supra, 256 Conn. 815–16, in an appeal regarding the proper valuation of the plaintiff's condemned property, we concluded that the trial court improperly had excluded evidence regarding environmental contamination and remediation costs in determining the compensation due the plaintiff as a result of the taking. In addition to these matters, the parties also are involved in separate litigation, tried simultaneously with this replevin action and now still pending before the trial court; *Windham* v. *ATC Partnership*, Superior Court, judicial district of New London at Norwich, Complex Litigation Docket, Docket No. CV-96-0125207-S; in which Windham has brought an action against the plaintiff in order to recover delinquent real estate taxes.

property and that there may be a claim that Windham Mills is, in fact, in possession of the personal property described in schedule A attached to the complaint.

"The complaint further alleges that the defendants are wrongfully detaining the plaintiff's property, and have failed, neglected and refused to return it to the plaintiff, all to the plaintiff's special loss and damage, and have prevented the plaintiff from removing it from the real estate. It is alleged further that the plaintiff is the lawful owner of the personal property over which the defendants have maintained possession and that the plaintiff has the right to immediate possession of the personal property." Id., 440–41.

Beyond this factual predicate as articulated by the Appellate Court, our review of the record reveals the following additional facts relevant to the defendants' claim. On May 18, 1994, prior to both the condemnation of the plaintiff's real property and the plaintiff's initiation of this replevin action, the tax collector for Windham issued an alias tax warrant, pursuant to General Statutes § 12-162,[6] authorizing the seizure of property belonging to the plaintiff and located at the mill complex. This warrant indicated that the plaintiff's tax delinquency, together with the interest accrued and related lien fees, totaled $251,749.82. On the face of this warrant, in the upper right corner, was typed the following: "To protect fixtures and other material of historic value."[7]

---

[6] General Statutes § 12-162 provides in relevant part: "Any collector of taxes, in the execution of tax warrants, shall have the same authority as state marshals have in executing the duties of their office, and any constable or other officer authorized to serve any civil process may serve a warrant for the collection of any tax assessed, and the officer shall have the same authority as the collector concerning taxes committed to such officer for collection. Upon the nonpayment of any property tax when due, demand having been made therefor as prescribed by law for the collection of such tax, an alias tax warrant may be issued by the tax collector . . . ."

[7] On the day after the issuance of this alias tax warrant, Windham also commenced an action requesting injunctive relief against the plaintiff. Specif-

Following a bench trial, the trial court rendered judgment in favor of the defendants.[8] In its memorandum of decision, the trial court concluded that the plaintiff could not prevail in its replevin action because it had failed to demonstrate sufficiently an essential element of its case, namely, that the pieces of property alleged to be detained wrongfully and sought to be replevied were " 'goods or chattels' . . . ."[9] The court noted that the replevin statute, § 52-515, provides in relevant part that "[t]he action of replevin may be maintained to recover any *goods or chattels* in which the plaintiff has a general or special property interest . . . ." (Emphasis added; internal quotation marks omitted.) The trial court therefore determined that the plaintiff could not

ically, Windham alleged that the plaintiff had entered into an agreement with Windham regarding the rehabilitation and redevelopment of the mill complex and had breached the agreement by removing valuable and historic property from the complex without Windham's consent. *ATC Partnership* v. *Windham,* supra, 71 Conn. App. 441. In response to this request for injunctive relief, the plaintiff's counsel sent correspondence to Windham's counsel indicating that his clients had not removed anything from the mill property, had no immediate plans to remove anything, and would agree, without a court order, to abstain from removing any property pending a hearing on the matter. Id. This request for an injunction, however, was never adjudicated as Windham withdrew its request for injunctive relief shortly before the scheduled hearing. Id., 441–42.

[8] Contemporaneously, the trial court also heard Windham's action against the plaintiff regarding allegedly delinquent property taxes. See footnote 5 of this opinion. On the same day that it issued its memorandum of decision in the replevin action, September 29, 2000, the trial court also issued a memorandum of decision in the tax collection action, rendering judgment in favor of Windham. Subsequently, the plaintiff's motion for a mistrial in the tax collection action was granted and that matter now remains pending before the trial court.

[9] In addition, the trial court further concluded that, even if the plaintiff had satisfied the requirements of § 52-515 in demonstrating that the pieces of property underlying its claim were "goods or chattels," the defendants nevertheless were entitled to the protections afforded by the doctrine of municipal immunity because their actions were taken in the exercise of a discretionary governmental function—the issuance of an alias tax warrant. In this appeal, we do not resolve the issue of the applicability of the doctrine of municipal immunity in connection with the issuance of an alias tax warrant. See footnote 2 of this opinion.

maintain an action pursuant to § 52-515 unless it met the threshold burden of demonstrating that the pieces of property at issue were " 'goods or chattels,' " which are properly the subject of a replevin action, and not fixtures.[10]

The trial court then set forth our well settled standard for determining whether a piece of personal property has become so connected to realty that it may be regarded as having become a fixture and a part of the realty. The trial court noted that, in order for a piece of property to have converted from personalty to a fixture, "an article should not only be annexed to the freehold, but . . . it should clearly appear from an inspection of the property itself, taking into consideration the character of the annexation, the nature and the adaptation of the article annexed to the uses and purposes to which that part of the building was appropriated at the time the annexation was made, and the relation of the party making it to the property in question, that a permanent accession to the freehold was intended to be made by the annexation of the article." *Capen* v. *Peckham*, 35 Conn. 88, 94 (1868). This standard, the trial court concluded, places critical temporal focus upon the facts and circumstances present " 'at the time the annexation was made' " in order to determine whether a piece of property has become a fixture.

Furthermore, following a review of case law from other jurisdictions, the trial court recognized that the "modern trend" of jurisdictions is to adopt the so-called " 'integrated industrial plant doctrine,' " which provides " 'that any and all machinery essential to the proper functioning of a plant, mill, or similar manufactory is a fixture, or is at least so presumed to be, irrespective

---

[10] A "fixture" is an article of personal property that has become so annexed to realty that it is regarded as having lost its character of personalty and as having become a part of the real property. See Black's Law Dictionary (7th Ed. 1999).

of the manner in which it is annexed to the realty and even though it is not attached thereto at all.' " Put differently, in determining whether property associated with a mill is a fixture, the doctrine places primary emphasis not upon the precise method of annexation, if any, but upon the strength of connection between the property's intended use and the operation of the mill. Although recognizing that Connecticut has not adopted the doctrine explicitly, the trial court noted that our standard, in placing primary emphasis upon factors evincing an intent to create a fixture rather than the precise method of annexation employed, was in harmony with the doctrine's reliance upon more than mere physical connection to the realty.[11]

Applying these principles to the property underlying the plaintiff's replevin claim, the trial court concluded that the pieces of property sought to be replevied by the

---

[11] As discussed more thoroughly subsequently in this opinion, the pieces of property underlying the plaintiff's claim fall generally into two varieties: (1) machinery and equipment previously used in the operation of a textile mill, ostensibly suited solely for that purpose, the bulk of which is physically attached to the realty; and (2) tools and materials of a more general usage, such as hand tools and workbenches, which had been used during the operation of the textile mill but which are not physically connected to the realty at the present time. With regard to the first category of property, the determination by the trial court that such pieces were fixtures was a hybrid conclusion—finding the materials to be fixtures under both settled Connecticut law as well as the integrated industrial plant doctrine. Because the decision of the trial court under our standard for determining whether a piece of property is a fixture provides an adequate ground independent of the applicability of the integrated industrial plant doctrine, we need not resolve whether we recognize the doctrine in Connecticut. Furthermore, with regard to the second category of property, as explained in the trial court's memorandum of decision in response to the plaintiff's motion for articulation, the basis for the trial court's decision that such pieces of property were fixtures was that the plaintiff's evidence presented in connection with these pieces was vague and limited. The trial court therefore concluded that the plaintiff had not met its burden of demonstrating affirmatively that such pieces were goods and chattels. As we agree with the trial court in this regard, we similarly need not decide whether Connecticut adopts the integrated industrial plant doctrine in this context either.

plaintiff were fixtures and, consequently, the plaintiff could not prevail in its replevin claim brought pursuant to § 52-515. In particular, the trial court referred to the testimony of Jacob Pinson, a member of the plaintiff partnership, as being relevant to the court's findings with regard to the nature of the property at issue. In his testimony, Pinson indicated that the "bulk" of the pieces of property sought to be replevied was located in the machine shop of the mill complex and consisted primarily of "equipment and machinery bolted to the floor . . . ." Pinson further testified that the pieces originally were installed in the late nineteenth century and were necessary for the proper functioning of a textile mill of that era. The trial court also noted Pinson's testimony that, when the plaintiff acquired the complex in 1987, there was no separate bill of sale provided for the pieces of property at issue; rather, the plaintiff acquired the pieces through its taking of title to the "land with all the buildings and improvements thereon situated . . . ." Finally, the trial court's memorandum referred to the testimony of David Page, the deputy sheriff who had served the alias tax warrant upon the plaintiff's property. Page testified that, in executing the warrant, he did not remove any property from the premises but instead posted public notice of the seizure on the buildings and secured the premises in order to prevent removal of the property. On this factual record, the trial court concluded that the pieces of property at issue were fixtures, annexed to the realty in the late nineteenth century and remained so connected until the present, and that the plaintiff's replevin claim therefore failed because the pieces were not " 'goods or chattels' " as required by § 52-515. Having concluded that the plaintiff had failed to meet its burden as to an essential element of its claim, the trial court rendered judgment in favor of the defendants.

Subsequently, the plaintiff moved the trial court to articulate further the bases for its decision that the

plaintiff had failed to demonstrate that the property sought to be replevied were "goods or chattels."[12] First, the plaintiff requested an explicit determination by the trial court as to whether the parties, at the time the pieces of property were seized in May, 1994, considered the property to be personalty in light of their expectation that the pieces would be dismantled as a part of the redevelopment of the mill complex and thereafter preserved for historical purposes. More specifically, the plaintiff noted that the trial court's decision had relied primarily upon the facts and circumstances existing when the property was annexed originally to the land, at which time the complex was a functioning mill, in determining that the pieces of property were fixtures. Claiming that this original intent was not dispositive in the inquiry as to the current status of the property, the plaintiff relied upon *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, 193 Conn. 208, 215–20, 477 A.2d 988 (1984), in which this court concluded, in the context of a dispute as to whether certain gasoline storage tanks were to be considered fixtures or articles of personal property, that the trial court properly had found that the storage tanks were personalty because the owner of the tanks objectively had manifested, through his treatment of the property, an intent consistent with consideration of the tanks as personal property and not as fixtures. Analogizing the rationale of *Waterbury Petroleum Products, Inc.*, to the present case, the plaintiff requested findings by the trial court as to the intent and expectations of the parties with regard to the status of the property at the time of the seizure.

---

[12] The plaintiff also requested articulation as to whether the value of the property seized had been credited to the plaintiff's outstanding tax obligation and, if such a credit had not been applied, whether the tax collector had exceeded the scope of her authority in seizing property and failing to credit the value properly to the tax obligation outstanding.

Second, the plaintiff requested articulation as to the applicability of the legal principles set forth in the trial court's memorandum, which focused primarily upon the industrial machinery that had been seized, to other pieces of seized property, such as hand tools, furniture and workbenches, without the same degree of connection to the realty. See footnote 11 of this opinion. In the plaintiff's view, such pieces of property, which were not integral to the functioning of a textile mill, should not have been considered to have lost their status as personalty and have transformed into fixtures.

Thereafter, the trial court issued its articulation. As to the plaintiff's first request, the trial court stated "the plaintiff's motion to articulate my decision in order to discern the intent or expectations of both of the parties, or either one of them, [at the time of the seizure of the property] is denied as being factually irrelevant to the legal issues which are the subject of this appeal." Notwithstanding this language, the memorandum discussed the plaintiff's claim more fully, indicating that the plaintiff's support for the proposition that "the controlling factor should be the current owner's intent to treat the machinery and equipment as personal property, rather than the former owner's intent at the time of the annexation," rested upon one case, *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* supra, 193 Conn. 208. The trial court concluded that *Waterbury Petroleum Products, Inc.,* was factually distinguishable because, in that case, "the trial court . . . [had] found that the property in question had been consistently treated as personalty by the parties . . . ." The memorandum went on to conclude that, in this matter, events subsequent to annexation did not change the court's determination that the plaintiff's replevin claim failed because the pieces of property "were fixtures *at the time the alias tax warrant was served.*" (Emphasis added; internal quotation marks omitted.)

In sum, therefore, the trial court determined that the pieces of property became fixtures during the operation of the mill, later events did not change the status of those pieces of property and, therefore, the pieces were fixtures at the time the tax warrant was executed.

With regard to the plaintiff's second request, regarding the status of the unattached and generic pieces of property, the trial court indicated that the photographic evidence offered by the plaintiff at trial demonstrated "that the bulk of the machinery and equipment was either bolted to the floors, walls or ceilings of the buildings," and that the testimonial evidence presented by the plaintiff regarding property not so physically attached "lacked specificity and was limited in scope." Further, the trial court referenced Pinson's testimony that he had removed what he deemed to be personal property a number of times prior to May, 1994. The trial court found that such removal manifested the plaintiff's intent to treat those particular pieces of property as personalty, and that the removal meant that the pieces "thereby lost their status as fixtures . . . ." Additionally, the trial court found that the remaining pieces were necessary to the functioning of a textile mill, just as the machinery was, and that all of the pieces of property remaining on the premises were fixtures.

The plaintiff subsequently appealed from the judgment of the trial court to the Appellate Court, claiming that the trial court improperly had concluded that the pieces of property at issue were fixtures, and not goods or chattels, thereby foreclosing an action in replevin.[13]

---

[13] Before the Appellate Court, the plaintiff also claimed that the trial court improperly had concluded that: (1) the plaintiff's property was not detained wrongfully because it was seized pursuant to an alias tax warrant; and (2) the defendants were protected by the doctrine of municipal immunity insofar as the seizure of the plaintiff's property was in furtherance of the exercise of a discretionary governmental function. *ATC Partnership* v. *Windham*, supra, 71 Conn. App. 439. Although these issues were contained within our grants of certification to appeal, we do not resolve either issue in this appeal. See footnote 2 of this opinion.

*ATC Partnership* v. *Windham,* supra, 71 Conn. App. 439. The Appellate Court reversed the judgment of the trial court, concluding that, with regard to the trial court's determination that the pieces of property were fixtures and not " 'goods or chattels' " for the purposes of § 52-515, the trial court "wholly ignored the plaintiff's claim of ownership of the [property] . . . although it never made any determination that [Windham], which never asserted such a claim [of ownership], was the rightful owner." Id., 444. Moreover, the Appellate Court concluded that "[t]he assumption of the [trial] court that because much of the personal property claimed by the plaintiff . . . was affixed or fastened to the floors or walls of the buildings, that [the] property constituted fixtures that had become part of the real estate [Windham] had acquired in the condemnation proceeding, is unsupported by anything in the record concerning the condemnation proceeding." Id., 445.

On appeal, the defendants claim that the Appellate Court improperly concluded that there was insufficient evidence to support the trial court's finding that the pieces of property at issue were fixtures. The plaintiff claims, to the contrary, that the Appellate Court properly concluded that the trial court's determination that the pieces of property were fixtures was unsupported by the record because the trial court did not base its decision on the manner in which the parties had treated, and intended to treat, the property. In the plaintiff's view, the defendants had demonstrated that they considered the property to be personalty by seizing the pieces pursuant to an alias tax warrant. Beyond that manifestation of intent, the plaintiff claims that because the parties intended to redevelop the complex in a manner that called for the treatment of the pieces as personalty, the pieces could no longer be considered to have retained the status of fixtures. We agree with the defendants.

Before we address the merits of the defendants' claim, we set forth the standard of review that governs our review of this issue. The question as to whether a particular piece of property is personalty or a fixture is a question of fact. *Vallerie* v. *Stonington*, 253 Conn. 371, 372–73, 751 A.2d 829 (2000); *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, supra, 193 Conn. 217; see also *Pfeifle* v. *Tanabe*, 620 N.W.2d 167, 174 (N.D. 2000) (whether parties intended to treat existing fixtures as personalty and thereby constructively severed property from realty is question of fact). As such, our review, as well as that of the Appellate Court, of this determination by the trial court is limited to deciding whether the findings of the trial court were clearly erroneous. *Leonard* v. *Commissioner of Revenue Services*, 264 Conn. 286, 294, 823 A.2d 1184 (2003). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *DiMartino* v. *Richens*, 263 Conn. 639, 661, 822 A.2d 205 (2003).

Additionally, we recognize that the defendants' claim also raises an issue with regard to the interpretation of our replevin statute, § 52-515, and, more specifically, whether an action in replevin is foreclosed if the property underlying the claim is a fixture. Issues of statutory construction raise questions of law, over which we exercise plenary review. *Commissioner of Transportation* v. *Kahn*, 262 Conn. 257, 272, 811 A.2d 693 (2003).

We begin with the principles of law relevant to the defendants' claim. "To constitute a fixture, we must look at the character of how the personalty was attached to real estate, the nature and adaptation of the [personalty] to the uses and purposes to which they were appropriated at the time the annexation was made,

and whether the annexer intended to make a permanent accession to the realty. . . . The character of the personal property attached to the real estate is determined at the time that the property is attached to the real estate." (Citation omitted; internal quotation marks omitted.) *Vallerie* v. *Stonington*, supra, 253 Conn. 372.

This standard, which we have reaffirmed consistently, is the method by which we determine whether a piece of personal property has become so connected to realty so as to have lost its character as personalty and become a fixture. The nature of property, however, is such that its status as either personalty or fixture is subject to multiple generations of transformation. Just as it is axiomatic that articles of personal property may, through treatment by those exerting control over the property, become fixtures, the inverse is also true—fixtures may be severed from the underlying realty and thereby revert back to the status of personalty. With regard to the potential progression of property from fixture to personalty, the general rule is that such severance may be either actual, in the sense of physical separation from the realty and removal from the land, or constructive, as in a situation in which a party objectively manifests its consideration of property as personalty; *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, supra, 193 Conn. 217–20 (treatment of property as personalty by owner of realty relevant to determination of status of property as fixture or personalty); or in which parties agree as between themselves to consider a fixture as personalty. *Marsh* v. *Binstock*, 462 N.W.2d 172, 174 (N.D. 1990) (concluding that constructive severance occurs when owner of realty with attached fixtures sells fixtures separately from real estate); *Bohle* v. *Thompson*, 78 Md. App. 614, 626, 554 A.2d 818 (subsequent purchasers of realty with notice of prior treatment of certain property as personalty are bound thereby and may not claim property to have

status of fixture), cert. denied, 316 Md. 364, 558 A.2d 1206 (1989).

With these principles in mind, we turn to the defendants' claim. As a threshold matter, we are mindful that the parties do not dispute that, during the time period in which the mill complex was functioning as a textile mill, the pieces of property at issue were fixtures. The plaintiff concedes that at the time the pieces were introduced to the mill complex, the owner of the complex intended the pieces to be permanent accessions to the realty and, therefore, fixtures. The only question, therefore, is whether events subsequent to the cessation of mill operations had the effect of severing the fixtures from the realty such that the fixtures reverted to the status of personalty.

As recognized by the trial court, when the plaintiff initially acquired the mill complex in 1987, no separate bill of sale was provided in connection with the pieces of property housed within the buildings. Instead, the plaintiff acquired the pieces of property by means of the same warranty deed through which the plaintiff acquired the real property and various improvements thereon. Moreover, as of the time of the plaintiff's acquisition of the mill complex, there is nothing in the record to suggest that the pieces of property had been severed, actually or constructively, by previous owners of the complex. Consequently, at the time of the plaintiff's acquisition of the complex, the pieces of property at issue remained fixtures annexed to the realty. If severance occurred, therefore, it would have had to have taken place after the plaintiff's acquisition of the complex and prior to the condemnation of the complex by the defendants.[14]

---

[14] The condemnation of the mill complex is the end date for this inquiry because, if the pieces of property were fixtures at the time the complex was condemned, the pieces of property were a legal part of the realty taken through the power of eminent domain just as the land itself was taken.

Our review of the trial court's September 29, 2000 memorandum of decision in this matter reveals that the great weight of the court's findings of fact, and its enunciation of relevant legal principles, focused upon the initial introduction of the pieces of property to the complex and their attendant status as fixtures integrally connected to the operation of a textile mill of that era. Although this memorandum does not focus much attention on the issue of whether the fixtures had been severed following the plaintiff's acquisition of the complex, the trial court's subsequent memorandum in response to the plaintiff's motion for articulation focused attention upon such severance issues. In this second memorandum, the trial court, in response to the plaintiff's claim that the parties' treatment of the pieces of property at issue transformed the pieces into personalty, concluded that, notwithstanding these events, the pieces of property remained fixtures.

As discussed previously, both memoranda of the trial court relied heavily upon the testimony of Pinson, the plaintiff's own witness. Regarding the impact of events subsequent to the plaintiff's acquisition of the complex on the status of certain pieces of the property at issue, the trial court's memorandum of decision on the plaintiff's motion for articulation credited Pinson's testimony that the plaintiff had removed certain pieces of property on a number of occasions prior to the May, 1994 seizure by the defendants. On the basis of this testimony, the trial court concluded that those items removed from the complex had been severed from the realty and "thereby lost their status as fixtures . . . ." The trial court therefore concluded that the pieces of property that had been removed had been severed physically from the realty and reverted to personalty; necessarily implicit in this conclusion of the trial court with regard to actual severance is the logically related conclusion that those pieces of property that had not been

removed, meaning the entirety of the property at issue in the plaintiff's replevin action, never actually were severed from the realty. In fact, on the basis of the evidence presented at trial, the trial court found, to the contrary, that the "bulk" of the property at issue remained physically attached to the buildings and realty.[15]

With regard to the issue of constructive severance, we are persuaded that the trial court's finding was not clearly erroneous. In its memorandum of decision in response to the plaintiff's motion for articulation, a motion which raised the issue of constructive severance by virtue of the plaintiff's reliance upon *Waterbury Petroleum Products, Inc.*, the trial court rejected the plaintiff's claim that the parties constructively had severed the pieces of property through their past treatment, and intended future treatment of the pieces as personalty. Specifically, the trial court determined that *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, supra, 193 Conn. 219–20, "is factually distinguishable, because the trial court in that case . . . found that the property in question had been . . . treated [consistently] as personalty by the parties . . . ." (Citation omitted.) There is no plausible reading of this state-

---

[15] As for the pieces of property, such as hand tools and workbenches; see footnote 11 of this opinion; that the plaintiff claimed were not physically attached to the realty, the trial court concluded that the evidence presented by the plaintiff on such pieces "lacked specificity and was limited in scope." We see no basis to conclude otherwise. In bringing a replevin action, the plaintiff bore the burden of sufficiently demonstrating that the statutory requirements of § 52-515 had been met. In this context, the plaintiff bore the burden of demonstrating affirmatively that all of the pieces of property sought to be replevied were "goods or chattels" to which the statute applied. Moreover, because it was conceded that these pieces had been fixtures during the operation of the mill, the plaintiff had to demonstrate subsequent severance from the realty and transformation into personalty in order to maintain an action in replevin. Because the plaintiff failed to shoulder this burden of proof, we need not determine whether Connecticut recognizes the integrated industrial plant doctrine.

ment by the trial court other than a determination that the court had found that the parties in this matter had *not* treated the pieces of property at issue as personalty so as to sever the fixtures from the realty.

In the trial court, the plaintiff claimed that the fixtures constructively had been severed by virtue of the parties' expectations that the complex would no longer be operated as a textile mill, and that the property would be removed from the complex and moved to a museum for historical preservation. The trial court disagreed, concluding that the plaintiff's "disappointed expectations" were insufficient to have severed the fixtures from the realty. On appeal, the plaintiff advances another basis on which it claims that the pieces of property at issue were severed constructively—that the defendants' use of the alias tax warrant to seize the pieces of property operated as a constructive severance of the pieces from the realty because it evinced an intent to treat the pieces as personalty. We are not persuaded by either claim of constructive severance.

In his deposition, Page, the deputy sheriff who executed the alias tax warrant, testified that his seizure of the pieces of property at issue pursuant to the warrant did not consist of the removal of the pieces from the complex. Instead, Page testified that he posted public notice of the seizure on the various buildings housing the pieces of property, informed security guards working at the complex of the seizure and that no property was to be removed, posted Windham police officers at the complex for a time, and conducted periodic checks of the complex in order to ensure that no property had been removed. We conclude that such activities did not operate as an actual severance of the property nor did they constructively sever the pieces of property. In fact, to the contrary, Page's directive with regard to the tax warrant was to ensure that the pieces of property *were not* removed from the complex, effecting an actual sev-

erance. On this record, the warrant did no more than maintain the status quo in which the pieces of property were fixtures annexed to the realty.

Furthermore, in this context the mere use of an alias tax warrant cannot be construed, in and of itself, as a constructive severance of fixtures from realty. We note that the alias tax warrant statute, § 12-162, authorizes the seizure of not only "goods and chattels" to satisfy a delinquent tax obligation, but also the seizure of real estate. Although the record indicates, and the plaintiff spends much of its brief discussing, the apparent failure of the defendants to comply with the other requirements of the alias tax warrant scheme, including the disposal of the seized property and the application of the resulting proceeds to the tax obligation outstanding, such issues do not impact the status of the pieces of property as fixtures or personalty.

Similarly, the trial court's finding that the plaintiff's mere expectations with regard to the future for the pieces of property at issue were insufficient to have effected a constructive severance was not clearly erroneous. As discussed in footnote 5 of this opinion, the economic development plan created by the parties proposed the phased redevelopment of the mill complex, converting the complex to modern light industrial use with due regard for the status of the complex as a historical landmark, and called for the removal of certain of the pieces of property underlying this action from the realty. Beyond such planning and expectations, however, it does not appear that the plan was implemented in any meaningful way or was agreed to by the defendants, as is confirmed by the fact that the pieces of property remained at the time of the execution of the alias tax warrant. We do not view the parties' treatment of the pieces of property, amounting to a tentative agreement on redevelopment that never reached fruition, as a sufficient basis for constructive

severance. In *Waterbury Petroleum Products, Inc.*, we concluded that the trial court properly had found certain storage tanks to be personal property in large part because of the trial court's finding that the owner of the tanks had listed them on "personal property field sheets [and that such conduct was] a significant objective manifestation of [the owner's] intent . . . to treat the tanks as personalty." (Citation omitted; internal quotation marks omitted.) *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, supra, 193 Conn. 218. By contrast, the plaintiff in the present case demonstrated no more than an unrealized intent to treat the pieces of property as personalty in the future, and did not demonstrate an objectively manifested current intent to treat the pieces as personalty.

In its opinion, the Appellate Court focused largely upon its conclusion that the defendants improperly had used the alias tax warrant procedure for a purpose unrecognized by the tax warrant scheme, namely, for the preservation of historical artifacts and not for the satisfaction of tax obligations. *ATC Partnership* v. *Windham*, supra, 71 Conn. App. 444. This focus, however, missed the mark. Although those considerations are relevant to the merits of a replevin claim, in determining whether property has been "wrongfully detained" as required by § 52-515, they are irrelevant to the question as to whether the pieces of property underlying the claim are "goods or chattels," as required by the statute. Rather, as demonstrated, the record contains sufficient support for the trial court's finding that the pieces of property at issue were fixtures at all relevant times and the Appellate Court improperly concluded otherwise.

Lastly, having concluded that the factual record contains adequate support for the trial court's determination that the pieces of property at issue were fixtures, we further conclude that the trial court's interpretation

of § 52-515 was correct. By its terms, § 52-515 authorizes the maintenance of an action in replevin for the recovery of "goods or chattels . . . ." See footnote 3 of this opinion. Fixtures, a legal part of the realty without the independent character of "goods or chattels," are not included within the scope of our replevin statute. Consequently, the plaintiff's replevin action seeking the recovery of fixtures is inadequate as a matter of law.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court in favor of the defendants.

In this opinion the other justices concurred.