******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHARLES ILL *v.* ELLEN MANZO-ILL
(AC 37070)

DiPentima, C. J., and Keller and Bishop, Js.

*Argued April 14—officially released July 12, 2016*

(Appeal from Superior Court, judicial district of Stamford-Norwalk, Shay, J. [dissolution judgment]; Heller, J. [motion to dismiss].)

*James H. Lee*, for the appellant (defendant).

*Paul T. Tusch*, with whom was *Danielle J. B. Edwards*, for the appellee (plaintiff).

*Opinion*

KELLER, J. The defendant, Ellen Manzo-Ill, appeals from the judgment of the trial court dismissing her postdissolution motion to modify her alimony award. On appeal, the defendant claims that the trial court erred in concluding that (1) Practice Book § 25-34 (e)[1] authorized it to dismiss her motion for modification, and (2) she failed to show good cause for her failure to reclaim her motion within three months of the date it was filed and failed to prosecute the motion with reasonable diligence. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On August 19, 2008, following a five day trial, the court, *Shay, J.*, dissolved the marriage of the plaintiff, Charles Ill, and the defendant. As set forth in the memorandum of decision rendering the judgment of dissolution, the court found that the defendant was fifty-two years old and "employed throughout the marriage, first by IBM and then by AT&T, up through 1998 when the family moved to Paris, France, after which [time] she became a full time homemaker and has not worked outside of the home since. Her sole reported net income of approximately $1300 per month is derived from interest and dividends. For much of the marriage, her annual earnings, well into six figures, matched or exceeded those of the [plaintiff]. . . . The [plaintiff] is fifty-four years old . . . . He has a BS in mechanical engineering, as well as an MBA . . . . He has been employed throughout the marriage reaching the top rungs of the corporate ladder." The court further noted that the plaintiff's last employment prior to the dissolution was at Avaya as a senior vice president of global sales. The court found: "His annual compensation there was $750,000 including incentive pay. At some point, the company was acquired by venture capitalists and went private. He left in May of this year, and he is currently looking for work."

In that portion of the judgment addressing alimony, the dissolution court ordered each of the parties to pay nominal alimony of $1 per year to one another until the death of either party or the remarriage of the other party, whichever shall sooner occur, and stated: "It is the intention of the court that any future alimony order be based solely upon the earned income from employment, and not upon investment or other passive income." (Emphasis omitted.) The court also indicated: "[I]n making its award of nominal periodic alimony . . . the court . . . finds . . . that each party has a demonstrable and substantial earning capacity and an ability to support himself or herself without the financial assistance of the other; that the wife's medical condition is treatable with medication and does not adversely limit her ability to maintain gainful employment in any significant manner; and that the court has

particularly considered the length of the marriage, the ages of the parties, their education and past employment history, the ages of the children and the diminished caretaker role for each parent, and the award of property . . . including income-producing assets, as well as the division of the [plaintiff's] pension and other retirement assets of the parties."

Neither party was satisfied with the terms of the dissolution judgment. After the judgment of dissolution was rendered, on October 3, 2008, in response to the plaintiff's motion for reargument and reconsideration, the court filed a corrected memorandum of decision, but it did not alter the terms of the alimony order. Subsequently, on October 23, 2008, the plaintiff filed an appeal that was withdrawn on June 8, 2010. On September 19, 2008, the defendant filed a motion to open the judgment, which the court denied on April 20, 2010. Later, on May 24, 2010, the court denied the defendant's motion to reargue her motion to open the judgment, noting that the motion to open had been reclaimed more than three months after the date of its filing in derogation of Practice Book § 25-34 (e). Although the defendant filed a motion for extension of time to file an appeal from this denial on June 14, 2010, she withdrew her motion for extension of time on June 24, 2010 and did not appeal from the court's denial of the motion to open.

On April 6, 2010, shortly before the court denied the defendant's motion to open the judgment, she filed the motion for modification of alimony that is the subject of the present appeal. The defendant sought a modification on the basis of a substantial change in the parties' circumstances. Specifically, her motion alleged in relevant part as follows: "Since the date of the [decision dissolving the parties' marriage], the circumstances concerning this case have changed substantially in that the plaintiff is currently employed and earning an income, while the defendant is not currently employed, and that a substantial amount of time has elapsed since the judgment was entered and that as a result of the plaintiff's appeal of the judgment, the defendant has been denied access to the funds necessary to support herself." The funds to which the defendant claimed she had been denied access would have been derived from the property distribution ordered by the court in the judgment of dissolution.

After filing her motion for modification, the defendant initiated discovery, which she pursued throughout 2010 by serving the plaintiff with requests for production, to which the plaintiff objected; noticing a deposition of the plaintiff, for which he sought a protective order because he was unavailable on the date scheduled for the deposition; and issuing numerous subpoenas to various entities associated with the plaintiff's earnings and investments, all of which the plaintiff moved to

quash.[2]

On December 20, 2010, the court, *Wenzel, J.*, overruled all of the plaintiff's objections to the defendant's requests for production. As a result, the plaintiff's motions to quash were marked off as moot by the court on that same date. Six months later, on July 20, 2011, the defendant filed a motion for contempt claiming that the plaintiff had failed to comply fully with her discovery requests. The July 20, 2011 motion for contempt was marked off on August 1, 2011. On October 26, 2011, the plaintiff filed a motion for order of compliance with discovery pursuant to Practice Book § 13-14. No action has ever been taken on that motion.

On February 22, 2012, almost two years after the defendant had filed her motion for modification, the plaintiff moved to dismiss it on the grounds that the defendant had not prosecuted her motion with reasonable diligence and had failed to reclaim it within three months from its filing date pursuant to Practice Book § 25-34 (e). The plaintiff claimed that, in an attempt to circumvent the prohibition against reclaiming a motion after a period of three months from its filing date, the defendant had contacted the family caseflow coordinator unilaterally and had requested that her motion for modification be placed on the calendar. Further, the plaintiff argued that he had provided his last supplemental document production in response to the defendant's discovery requests in August, 2011, that the defendant had taken no action in court on her motion since that date, and that she also had failed to comply with his requests for production.

The defendant responded by filing another motion for contempt against the plaintiff on February 24, 2012, in which she claimed that the plaintiff still had failed to comply with discovery. The motion for contempt was marked off on March 19, 2012. The defendant renoticed the deposition of the plaintiff for April 3, 2012, but it did not take place. On April 16, 2012, the defendant filed an objection to the plaintiff's motion to dismiss, arguing that an exception to Practice Book § 25-34 (e) existed because her motion for modification twice had been scheduled for a hearing on a date certain.[3]

On May 21, 2012, the court, *Schofield, J.*, sustained the defendant's objection to the plaintiff's motion to dismiss the defendant's motion for modification.[4] Subsequent to Judge Schofield's ruling, the defendant renewed and expanded her discovery efforts. Between April 18, 2012, and November 14, 2012, she filed motions for commissions to take out-of-state depositions of various business entities connected to the plaintiff, but none of the depositions occurred either because the defendant did not pursue them as scheduled or the defendant failed to respond to and seek resolution of motions to quash and for protective orders sought by the plaintiff.[5] For nearly a year, between November 14,

2012, and November 21, 2013, the defendant did not make further filings. On November 21, 2013, without filing a motion for a commission, she issued a subpoena to IBM for a deposition, which the plaintiff moved to quash. The plaintiff also sought a protective order. Despite initiating efforts to take numerous depositions throughout the pendency of her motion to modify, the defendant admits she never took a single deposition. At no time after Judge Wenzel's decision overruling the plaintiff's objection to the defendant's requests for production on May 20, 2010, did the defendant obtain a ruling by the court that moved forward the discovery impasse she alleged to exist or that found that the plaintiff was noncompliant with the rules of discovery.

On December 26, 2013, the plaintiff filed a second motion to dismiss the defendant's motion for modification, which is the subject of this appeal. The plaintiff's motion to dismiss sought dismissal pursuant to Practice Book §§ 14-3,[6] 25-34 (e), and 25-48. In his motion, the plaintiff alleged that the defendant's delay in pursuing her motion for modification had not been reasonable and that to permit the defendant to continue to intermittently resurrect and then abandon her discovery efforts, or to pursue her motion after ignoring it for a significant period of time, worked a prejudice on the plaintiff by virtue of: (a) his being subjected to a new round of discovery after previously providing extensive documentation several years earlier; (b) his having to incur legal fees to defend himself against a motion and discovery attempts previously abandoned by the defendant; and (c) his having to stand ready for trial for several years while the defendant continued to decide whether to proceed with her motion. The defendant responded by issuing another subpoena, dated January 3, 2014, to the Dowling Group, the plaintiff's accounting firm, to which the plaintiff responded by filing a motion to quash and a motion for a protective order.

The defendant filed an objection to the plaintiff's motion to dismiss on February 19, 2014. In her objection, she claimed that she had obtained documents pursuant to subpoenas from multiple entities but still needed time to serve additional subpoenas upon several other entities, and that she had not obtained the plaintiff's tax records.[7] She also complained that, with respect to her discovery efforts, the plaintiff had engaged in obstructionist behavior. The court heard oral argument on the motion to dismiss on February 24, 2014. On May 14, 2014, the court granted the plaintiff's motion to dismiss.

In its memorandum of decision, the court set forth the protracted procedural history leading to the plaintiff's motion to dismiss the defendant's motion for modification of alimony. In its analysis, the court stated in relevant part: "Upon a review of the court file, it appears that much of the defendant's third party discovery was

initiated well before February, 2013. While the defendant's counsel may have had follow-up discussions in 2013 to secure compliance with the subpoenas that were served, and likely spent time in 2013 reviewing the material that was produced, these activities do not show sufficient good cause to excuse the delay in prosecuting the defendant's motion . . . . There is also nothing in the court file to indicate that the plaintiff was engaging in 'obstructionism and bad faith delay tactics' during this time that would excuse the defendant's delay in prosecuting her motion. Between May 24, 2012, and February 6, 2014, the defendant filed only two motions, both of which were for commissions to take out-of-state depositions . . . and the parties were before the court just three times, again, in connection with motions for commissions . . . . The defendant has failed to show good cause for her delay in prosecuting a four year old motion for modification . . . . Under Practice Book § 25-34 (e), the defendant's motion for modification is stale, it has not been diligently prosecuted, and it will not be considered by the court." The court granted the plaintiff's motion to dismiss.

Thereafter, the court denied the defendant's motion for reargument and reconsideration. This appeal followed.

I

We first address the defendant's claim that the court erroneously concluded that Practice Book § 25-34 (e) authorized it to dismiss her motion for modification of alimony. Because the propriety of the court's imposition of the sanction of dismissal necessarily depends on the propriety of its legal construction of the rule, our review is plenary. See *Wexler* v. *DeMaio*, 280 Conn. 168, 181–82, 905 A.2d 1196 (2006). "[T]he interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation." (Internal quotation marks omitted.) *In re Shanaira C.*, 297 Conn. 737, 758, 1 A.3d 5 (2010). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to

implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 757–58.

We begin with an examination of the language of Practice Book § 25-34 (e), which provides in relevant part: "Unless for good cause shown, no motion may be reclaimed after a period of three months from the date of filing." The rule neither expressly provides for the sanction of dismissal nor expressly forbids the imposition of such sanction. The rule, however, plainly authorizes a sanction in that, absent a showing of good cause, "no motion may be reclaimed" after three months of its filing. Practice Book § 25-34 (e). Reclaiming a motion is the only way to have it presented to the court for a hearing, for in the absence of a party's reclaiming the motion, it would not be placed on the calendar. Thus, the unmistakable effect of precluding a party from reclaiming a motion is to preclude a party from obtaining a hearing on such motion. The consequence of failing to secure a hearing on a motion is tantamount to losing the right to have it considered at all. Insofar as there is no practical difference between precluding a party from obtaining a hearing on a motion and a dismissal of such motion, we are not persuaded that the rule does not permit a court to clear its docket by dismissing a motion that, by operation of the rule, it is unable to entertain.

Furthermore, it is a logical consequence of the operation of Practice Book § 25-34 (e) for a court to grant a motion to dismiss a motion to which the rule applies because a motion that is not reclaimed or withdrawn might remain pending indefinitely if never acted upon.[8] The defendant argues that, procedurally, § 25-34 (e) is best addressed as a part of a final hearing on the merits, as opposed to being used to dismiss or deny a motion before any such hearing commences. This position defies common sense, and would eviscerate the provisions of § 25-34 (e). It would require the court unnecessarily to conduct a full hearing on the motion in order to determine whether to dismiss it or render a decision on its merits.

If a court, for docket management purposes, chooses to confer absolute finality to the issue of whether a party has lost the right to have the motion considered by ordering its dismissal, such an action does not, for all practical purposes, alter the intended consequence of the rule. A dismissal appropriately lays any issue as to the motion's viability, finally, to rest.[9] Otherwise, the result is an unworkable situation in which a court could be faced with repeated attempts by the movant to reclaim the motion, subject to repeated objections from the nonmovant that the rule prohibits the court from considering it. This situation would place the nonmovant in the untenable position of having to be perpetually

poised to defend the stale motion.

To the extent that there is any ambiguity as to whether Practice Book § 25-34 (e) authorizes a dismissal, we are guided by the relationship of that rule to other rules of practice and common-law principles governing the efficient disposition of litigation. We note that the court, faced with a case that had been languishing on its docket for years, also had other, similar, means to control the pace of litigation before it.

In the present case, the plaintiff based his motion to dismiss not only on Practice Book § 25-34 (e), but on the failure "to prosecute an action with reasonable diligence" ground of Practice Book § 14-3.[10] Although the defendant urges us to conclude that the court dismissed the motion solely on the basis of its reliance on § 25-34 (e), the court's memorandum of decision reflects that it relied on § 14-3, which is incorporated into the Practice Book chapter governing family matters by Practice Book § 25-48, as well. In addition to finding that the defendant failed to establish good cause for the delay in the pursuit of her motion to modify under § 25-34 (e), the court also found that the motion "has not been diligently prosecuted," thereby making a finding that was unmistakably related to the plaintiff's reliance on § 14-3.[11] Section 14-3, when applicable, specifically authorizes the court to "render a judgment dismissing the action . . . ." The omission of a specific citation to § 14-3 in the court's decision does not diminish or invalidate the court's specific finding, which is required under that rule, that the defendant had failed to diligently prosecute her motion. Such an interpretation of the court's opinion would elevate form over substance. It is clear that the court relied on the precepts of § 14-3, even though it did not expressly cite that rule.

With respect to the court's authority under Practice Book § 14-3, we observe that the plaintiff's second motion to dismiss was filed on December 26, 2013 and was argued on February 24, 2014. Thus, the two week notice requirement of § 14-3 was satisfied in the present case. The parties do not dispute that the defendant's motion for modification of alimony, postjudgment, is an "action." The definition of an "action" was discussed in *In re Investigation of the Grand Juror*, 188 Conn. 601, 452 A.2d 935 (1982). "In a general sense, the word action means the lawful demand of one's right in a court of justice; and in this sense it may be said to include any proceeding in such a court for the purpose of obtaining such redress as the law provides. . . . It includes not only the usual civil action instituted by process but also proceedings initiated by petition . . . stipulation . . . or motion." (Citations omitted; internal quotation marks omitted.) Id., 606.

Finally, we note that "[t]he power of a court to manage its dockets and cases by the imposition of sanctions

to prevent undue delays in the disposition of pending cases is of ancient origin, having its roots in judgments . . . entered at common law . . . and dismissals . . . . That power may be expressly recognized by rule or statute, but it exists independently of either and arises because of the control that must necessarily be vested in courts in order for them to be able to manage their own affairs so as to achieve an orderly and expeditious disposition of cases. . . . Simply stated, [t]he inherent powers of . . . courts are those which are necessary to the exercise of all others." (Internal quotation marks omitted.) *Feuerman* v. *Feuerman*, 39 Conn. App. 775, 777, 667 A.2d 802 (1995). Regardless of the authority contained in the Practice Book provisions, the court had the inherent authority to sanction a party who had failed to pursue a motion with reasonable diligence.

In light of the foregoing authority, we conclude that the defendant's claim that the court lacked the authority to dismiss her motion for modification is without merit.

## II

As we perceive it,[12] the defendant's second claim is that the court erred in concluding that she (1) failed to show good cause for her failure to reclaim her motion within three months of the date on which it was filed and (2) failed to diligently prosecute it. This discussion requires a two part analysis, because the standard for reviewing a trial court's decision on whether a motion is stale under Practice Book § 25-34 (e) is the clearly erroneous standard; see *Larson* v. *Larson*, 89 Conn. App. 57, 69, 872 A.2d 912, cert. denied, 274 Conn. 915, 879 A.2d 892 (2015); and the standard for reviewing whether a trial court's dismissal of an action under Practice Book § 14-3 is whether the trial court abused its discretion. See *Krevis* v. *Bridgeport*, 262 Conn. 813, 818–19, 817 A.2d 628 (2003).

## A

In *Larson* v. *Larson*, supra, 89 Conn. App. 69, this court indicated, as follows: "Whether a party has shown good cause in not pursuing a motion within the three month limitation is a question of fact for the trial court. [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . When employing this standard of review, this court cannot retry the facts . . . ." (Citation omitted; internal quotation marks omitted.) "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

(Internal quotation marks omitted.) *ATC Partnership* v. *Windham*, 268 Conn. 463, 479, 845 A.2d 389 (2004).

The defendant argues that, in considering whether she acted with good cause, the court should have offset the duration of the defendant's delay by the interval when an appellate stay incident to the plaintiff's appeal was in effect, and those intervals when each of his two motions to dismiss were pending. As to the discovery delays, the defendant argues that she should not be faulted for hesitating to proceed to a hearing on her motion without access to full and complete discovery. Finally, she argues that, at the February 24, 2014 hearing, she advised the court she was ready to proceed to a hearing on her motion at anytime.

In response to the arguments raised by the defendant, the plaintiff argues that the court noted lengthy periods of inaction by the defendant and set forth a chronology of that inactivity. The court also noted that the defendant had failed to pursue her 2011 motion for contempt regarding discovery, and had noticed numerous depositions, none of which occurred. More importantly, there was no record of any activity in the case for the period from November, 2012, until November, 2013. We agree with the plaintiff that the court's finding as to lack of good cause was not clearly erroneous in light of the defendant's inactivity for extended time periods and her repeated lack of follow-through in a series of noticed depositions. The plaintiff's appeal was withdrawn in 2010, only a few months after the defendant's motion for modification was filed, so how it would have affected her ability to proceed efficiently for the next three and one-half years is not evident. The court also rejected the defendant's claim that the plaintiff had engaged in bad faith delay tactics by raising appropriate and timely objections to her discovery requests, and our review of the grounds set forth in the plaintiff's motions to quash and for protective orders support, rather than undermine, the court's findings that the plaintiff's objections were not merely frivolous.

In addition, the defendant admitted that the plaintiff had provided documentation in response to her discovery requests, but focused on the need for signed tax returns or release authorizations to obtain the plaintiff's tax returns herself. We do not consider the inability to obtain tax returns a valid excuse for such an inordinate delay when the defendant's primary stated ground for a modification was the plaintiff's increased earnings. Tax returns are a prime source for information as to earnings, yet once the court had overruled the plaintiff's objections to her requests for production, the defendant failed to pursue a motion to compel the production of the tax returns or releases, failed to follow through with depositions, noticed in 2010 and 2012, of either the plaintiff or his accountant,[13] and failed to seek a scheduling order.

Most significantly, the plaintiff filed his first motion to dismiss in 2012, which Judge Schofield denied. This afforded the defendant a reprieve, giving her additional time to pursue the motion to modify the alimony award. Judge Schofield ordered her to obtain a hearing date and cease using lack of discovery as an excuse. At that hearing, or immediately thereafter, she did not press for any findings that the plaintiff had been noncompliant with discovery or any orders directed to the plaintiff to produce any specified documents prior to the hearing, which the court indicated was to be scheduled expeditiously. It is unrefuted in the record that the defendant did not follow the court's direction to obtain a hearing date. Not only was no hearing ever scheduled, but the defendant persisted in ineffectually pursuing more discovery without much involvement from the court until the plaintiff's second motion to dismiss was heard in February, 2014. Although the defendant claims she told the court during that hearing that she was ready to proceed, that was not the case. She in fact complained, in her written objection and at the hearing, of an inability to proceed due to the lack of sufficient disclosure of the plaintiff's tax returns. She also indicated that she wanted to take the plaintiff's deposition and get responses to subpoenas that were outstanding.

We conclude that the factual findings of the court support its conclusion that the defendant failed to show good cause to avoid a dismissal under Practice Book § 25-34 (e).

B

As we have determined previously in this opinion, the court's dismissal of the defendant's motion was based, in part, on its determination that she had failed to prosecute it with reasonable diligence under Practice Book § 14-3. "We review case management decisions for abuse of discretion, giving [trial] courts wide latitude. . . . A party adversely affected by a [trial] court's case management decision thus bears a formidable burden in seeking reversal. . . . A trial court has the authority to manage cases before it as is necessary. . . . Deference is afforded to the trial court in making case management decisions because it is in a much better position to determine the effect that a particular procedure will have on both parties. . . . The case management authority is an inherent power necessarily vested in trial courts to manage their own affairs in order to achieve the expeditious disposition of cases. . . . The ability of trial judges to manage cases is essential to judicial economy and justice. . . . We will not disturb a trial court's decision regarding case management unless after carefully examining the factual circumstances of the case, we determine that there was an abuse of discretion." (Citations omitted; internal quotation marks omitted.) *Krevis* v. *Bridgeport*, supra, 262 Conn. 818–19.

Although courts must be mindful of the policy favoring a trial on the merits of any dispute whenever possible, a court may still determine, in its sound discretion, that a party's diligence does not fall "within the reasonable section of the diligence spectrum. . . . A trial court properly exercises its discretion to dismiss for failure to prosecute if the case has been on the docket for an unduly protracted period or the court is satisfied from the record or otherwise that there is no real intent to prosecute . . . ." (Internal quotation marks omitted.) *Brochu* v. *Aesys Technologies*, 159 Conn. App. 584, 594, 123 A.3d 1236 (2015). "[T]he unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness." (Internal quotation marks omitted.) *Bobbin* v. *Sail the Sounds, LLC*, 153 Conn. App. 716, 727, 107 A.3d 414 (2014), cert. denied, 315 Conn. 918, 107 A.3d 961 (2015).

In part II A of this opinion, we set forth facts that support the court's finding of a lack of good cause. We conclude that those facts also support the court's finding that the defendant failed to prosecute her motion with reasonable diligence. The defendant's motion had been filed almost four years prior to the hearing on the motion to dismiss. The court reasonably construed four years to be an unduly protracted period for the pendency of a motion to modify alimony. The defendant's inaction for extended periods and her failure to take unequivocal, productive steps to obtain the discovery necessary and germane to the substantial change she alleged in her motion—an increase in the plaintiff's income—established that there was insufficient good cause for her delay in prosecuting her motion. A motion to increase an alimony order ostensibly should have as a primary purpose a serious need for immediate, increased financial support. Even when the defendant was reminded, at the time Judge Schofield denied the plaintiff's first motion of dismiss, of her urgent duty to ensure the forward progress of her motion to modify, the defendant did not accelerate or streamline her scattered and imprecise discovery efforts. She ignored the court's direction to obtain a hearing date and never sought a scheduling order, either of which would have provided her with protection from dismissal under Practice Book § 25-34 (e). We find no abuse of discretion in the court's decision to dismiss the defendant's motion for modification.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Practice Book § 25-34 (e) states in relevant part: "Unless for good cause shown, no motion may be reclaimed after a period of three months from the date of filing. This subsection shall not apply to those motions where counsel appeared on the date set by the judicial authority and entered into a scheduling order for discovery, depositions and a date certain for hearing."

[2] The plaintiff's motions to quash that were filed in 2010 alleged that the defendant was seeking to subpoena the same documents to which the

plaintiff had objected to producing in response to her requests for production, and that his objection had yet to be resolved.

[3] The hearing dates, May 30 and May 31, 2012, were eventually cancelled by the court.

[4] The record reflects that Judge Schofield ordered the parties "to proceed immediately downstairs and get a date" to have the motion heard on the merits. She advised the parties: "I do not want to hear any excuses from either side that you are not prepared to go forward on this date. I do not want to hear that there's outstanding discovery at all." At that hearing, the defendant maintained that the plaintiff had not fully complied with discovery, but she did not request any specific compliance orders from the court on that date. Although she requested a scheduling order for discovery at that time, one was never issued, and given the tenor of the court's order, that it did not want "to hear that there's outstanding discovery at all," it appears the court perhaps would not have countenanced further delay had a hearing actually been scheduled. Notwithstanding the court's specific directive, a new hearing date was not obtained, a fact which the defendant admitted in her motion to reargue before Judge Heller.

[5] In eight motions to quash filed between August 9, 2012, and December 26, 2013, the plaintiff claimed that the defendant either was failing to attach a Schedule A denoting what documents were being requested pursuant to her deposition subpoenas, or she was trying to take out-of-state depositions without first seeking the appointment of a commission from the court. In fact, the defendant admitted to serving subpoenas for documents on out-of-state entities prior to the proposed date of the depositions, obtaining the documents, which the plaintiff claimed were never shared with him, and then cancelling the actual depositions, a procedure the plaintiff claimed was in violation of General Statutes §§ 52-148a and 52-148c, and Practice Book § 13-28. In one instance, the plaintiff claimed that the defendant was seeking to depose an entity with which he had never been associated.

[6] Practice Book § 14-3, made applicable to family matters by Practice Book § 25-48, states in pertinent part: "(a) If a party shall fail to prosecute an action with reasonable diligence, the judicial authority may, after hearing, on motion by any party to the action . . . or on its own motion, render a judgment dismissing the action with costs. At least two weeks' notice shall be required except in cases appearing on an assignment list for final adjudication. Judgment files shall not be drawn except where an appeal is taken or where any party so requests."

[7] At the hearing on the motion to dismiss, the plaintiff argued that because the dissolution judgment limited an alimony increase to an increase in a party's wages, it was difficult to discern why the defendant's discovery efforts were related to information concerning the plaintiff's assets, as well as information concerning employment income and tax returns that predated the judgment of dissolution. The defendant countered that some of her discovery was in regard to a motion for compliance with property distribution orders contained in the dissolution judgment. The court correctly noted that there was no motion pending before it concerning compliance pertaining to property distribution. On appeal, the defendant has not raised any claim with respect to this issue and has not identified the motion for compliance to which she had referred during the hearing before Judge Heller.

[8] As previously noted, the defendant may have sought to avoid the rule's effect at one point by unilaterally requesting that the caseflow coordinator schedule her motion for a hearing rather than filing a notice of reclaim.

[9] In accordance with Practice Book § 25-34 (e), trial courts have imposed a variety of sanctions in response to a party's failure to reclaim a motion within three months after it has been filed. The plaintiff draws our attention to a number of decisions in which trial courts have dismissed motions that were determined to be stale. See, e.g., *Montgomery* v. *Shipman*, Superior Court, judicial district of Tolland, Docket No. FA-98-0067662-S (September 5, 2008) (appeal from family support magistrate dismissed when not reclaimed for over one year after filing without good cause shown for delay in pursuing appeal); *Miller* v. *Miller*, Superior Court, judicial district of Hartford, Docket No. FA-87-0327052 (April 2, 2002) (motion to modify alimony dismissed after court concludes that Practice Book § 25-34 [c] does not permit party to reclaim motion after period of three months and no good cause shown); *Hill* v. *Hill*, Superior Court, judicial district of Fairfield, Docket No. FA-91-0374254-S, (January 8, 2001), (vast majority of motions filed by plaintiff dismissed as stale and in violation of § 25-34 [e] when plaintiff's noncompliance with case management order established lack of good cause shown), aff'd, 75 Conn. App. 902, 818 A.2d 901, cert. denied,

264 Conn. 911, 826 A.2d 1155 (2003); *Lang* v. *Rufleth*, Superior Court, judicial district of Hartford, Docket No. FA-95-0710971 (July 26, 2000) (unreclaimed motions filed two years earlier, requesting division of marital property pursuant to agreement to permit court to reserve jurisdiction six months after dissolution for such division, dismissed absent showing of good cause).

The plaintiff has drawn our attention to the decisions of other trial courts that have denied the motions that were determined to be stale. See, e.g., *Nuzzi* v. *Nuzzi*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FA-06-4008282 (January 2, 2014), (nearly five year old motion to modify alimony denied under Practice Book § 25-34 [e] when no good cause shown for delay), rev'd on other grounds, 164 Conn. App. 751, A.3d    (2016); *Vallas* v. *Vallas*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FA-90-0112609-S (May 20, 1998) (family support magistrate's denial of motion not reclaimed for period of four years without good cause affirmed). As the plaintiff points out, several trial courts have declined to act on stale pendente lite motions, thereby denying retroactivity to support orders entered at the time of dissolution of the marriage. See, e.g., *O'Donnell* v. *Johnson*, Superior Court, judicial district of New London, Docket No. FA-12-4119469 (April 6, 2015) (claim for retroactive support order at time of final custody determination denied because court determined that, under § 25-34 [e], motion for pendente lite child support that was not reclaimed after three months under rule cannot be treated as still pending by operation of law); *Sudol* v. *Sudol*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FA-12-4023333-S, (September 8, 2014) (in absence of evidence that child's needs unmet or that plaintiff had suffered financial detriment, court, pursuant to § 25-34 [e], declined to enter retroactive child support order pursuant to plaintiff's pendente lite motion filed two years before date of dissolution but never reclaimed). Also, the plaintiff draws our attention to the decision of one trial court that, after finding good cause shown, overruled an objection to the docketing of a pendent lite motion reclaimed more than three months after its date of filing. See *Mendoza* v. *Scott*, Superior Court, judicial district of New London, Docket No. FA-06-4006691-S (July 11, 2007).

We suggest that a dismissal is a more appropriate sanction than a denial or the sustaining of an objection to redocketing the motion because a dismissal reflects a determination, made in accordance with Practice Book § 25-34 (e), that the motion procedurally cannot proceed further. In addition, a dismissal is a more common sanction when a party has failed to prosecute an action diligently. A denial could be construed as a decision on the merits of the motion, and we recognize that when a motion is dismissed as stale, the movant may file and serve the opposing party with a new motion, possibly alleging grounds similar to the grounds previously alleged in the dismissed motion. The movant, however, in the case of a motion seeking to modify alimony, will have lost the benefit of requesting retroactivity of any modified order beyond the filing date of the new motion. See General Statutes § 46b-86 (a), which states in pertinent part: "No order for periodic payment of permanent alimony . . . may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony . . . order from the date of service of notice of such pending motion upon the opposing party pursuant to section 52-50. . . ."

[10] See footnote 6 of this opinion.

[11] We observe that, before this court, the plaintiff has raised the court's reliance on Practice Book § 14-3 as an alternate ground upon which this court may affirm the judgment of the trial court pursuant to Practice Book § 63-4.

[12] Although the defendant has phrased the present claim in very general terms, by asserting that "[t]he trial court improperly dismissed [her] motion," our review of the substance of her analysis of the claim reveals the issues related to the claim that we will address.

[13] Only after the plaintiff filed his second motion to dismiss did the defendant renew her attempts to depose the defendant's accountant and move to compel the production of the plaintiff's tax returns or release authorizations for them. Due to the pendency of his motion to dismiss, the plaintiff objected.