******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

BARBARA A. FLEISCHER *v.*
WILLIAM B. FLEISCHER
(AC 40987)

Prescott, Bright and Eveleigh, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dis-
solved, appealed to this court from the judgment of the trial court
dismissing his motions to modify alimony and for contempt. Although
the motions were scheduled to be argued in June, 2015, no activity on
the motions occurred until December, 2016, when the court scheduled
a status conference, after which a full hearing was scheduled for the
motions in April, 2017, when the plaintiff argued that the motions should
be dismissed due to the defendant's failure to prosecute the motions
with reasonable diligence. Subsequently, the plaintiff filed a motion to
dismiss, which the trial court granted for the defendant's failure to
prosecute the motions with reasonable diligence. *Held* that the trial
court improperly dismissed the defendant's motions for modification of
alimony and for contempt: even though a trial court has wide discretion
in determining whether to dismiss an action for failure to prosecute it
with due diligence, there are limits to that discretion, and the sanction
imposed must be proportional to the violation or misconduct, which
did not occur here, as the sanction of dismissal was imposed for a
onetime, one and one-half year delay that occurred after the defendant's
counsel had been diagnosed with a serious illness, there was no evidence
showing that during that period of delay, the defendant was ever ordered
to prosecute the motions more expeditiously, the first time that the
defendant was confronted with potential dismissal was at the hearing
on the merits of the motion to dismiss, the court made no findings in
its memorandum of decision that it considered and found inadequate
lesser sanctions before dismissing the motions for failure to prosecute
them with due diligence, and the delay in prosecuting the motions was
due to the illness of the defendant's attorney, which tended not to justify
the severe sanction of dismissal; moreover, the defendant provided a
compelling reason for the delay, both parties were fully prepared to
move forward with a trial on the merits of the defendant's motions, and
the defendant never received, let alone ignored, orders from the court
regarding the motions, and the court's decision to dismiss the defen-
dant's motions created an appearance that it was a punishment for the
defendant's refusal to waive a claim that any reduction in alimony should
be retroactive to the date that the motion for modification of alimony
was filed.

Argued April 8—officially released September 10, 2019

*Procedural History*

Action for the dissolution of a marriage and for other
relief, brought to the Superior Court in the judicial dis-
trict of Danbury, where the court, *Ford. J.*, rendered
judgment dissolving the marriage and granting certain
other relief; thereafter, the court, *Axelrod, J.*, dismissed
the defendant's motions for modification of alimony
and for contempt, and the defendant appealed to this
court. *Reversed; further proceedings.*

*Logan A. Carducci*, with whom was *Daniel J. Krisch*,
for the appellant (defendant).

*Christopher P. Norris*, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. The defendant, William B. Fleischer, appeals from the judgment of the trial court dismissing, pursuant to Practice Book § 14-3, his motions for modification of alimony and for contempt on the ground that he had failed to prosecute the motions with reasonable diligence.[1] On appeal, the defendant claims that the trial court improperly dismissed his motions because there was no clear pattern of delay and the evidence showed his intent to prosecute the motions. We agree that the motions should not have been dismissed and, accordingly, reverse the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. The plaintiff and the defendant married on June 28, 1958. The parties' marriage was dissolved in a judgment dated May 31, 1984. The judgment incorporated the parties' separation agreement and provided, inter alia, that the defendant pay alimony to the plaintiff until her remarriage or death.[2]

On December 10, 2012, the defendant filed a motion for modification of alimony and a motion for contempt. In his motion for modification of alimony, the defendant argued that the plaintiff was earning substantially more income than she had been at the time of the dissolution judgment twenty-eight years prior, and, by contrast, the defendant was now earning substantially less. In his motion for contempt, the defendant argued that the plaintiff had not provided him with her W-2 forms, as required by section 3.2 of the separation agreement.[3] See footnote 2 of this opinion.

On November 4, 2014, the defendant moved in limine to preclude the plaintiff from having admitted certain evidence pertaining to his motions.[4] On December 3, 2014, the defendant served the plaintiff with a request for admissions. On December 19, 2014, a status conference was held on the parties' outstanding motions.

On February 25, 2015, the defendant's counsel, Attorney Allen G. Palmer, was diagnosed with Parkinson's disease. Attorney Palmer's diagnosis was disclosed in an affidavit attached to the defendant's opposition to the plaintiff's motion to dismiss; see footnote 12 of this opinion; and the plaintiff "does not challenge the medical diagnosis of [Attorney Palmer]" on appeal.

The parties subsequently entered into a stipulation, dated June 1, 2015, regarding the defendant's motion in limine and amended appendix to the motion in limine. The stipulation stated that the plaintiff was to file any objection by June 8, 2015, and counsel were to return to court on June 22, 2015, to argue the motions and objections. The plaintiff does not appear ever to have filed an objection to the motion in limine. In any event, no activity on the defendant's motion for modification of alimony and motion for contempt occurred between June, 2015, and December, 2016.

In December, 2016, the court scheduled a status conference on the motions for January 19, 2017. At the January 19 status conference, the court scheduled the matter for a full hearing on April 20, 2017.

At the April 20, 2017 hearing, both parties informed the court that they were prepared to move forward with a trial on the defendant's motions. The plaintiff, however, argued that both of the defendant's motions should be dismissed pursuant to Practice Book §§ 25-34 (f)[5] and 14-3 because they were not heard within three months of their filing date and the defendant had failed to prosecute the motions with reasonable diligence. The plaintiff also requested that, if a hearing on the motions were to proceed, the defendant waive his request to have the modification of alimony apply retroactively back to December 10, 2012, the date on which the motion was filed. The defendant's counsel responded that the defendant had been dutifully prosecuting the case, but there were several delays due to issues regarding scheduling and discovery. Additionally, he stated that his medical condition accounted for a portion of the delay.

After the defendant's argument, the court asked if the defendant was willing to waive any claim that modification of alimony be retroactive. The defendant responded no. After the defendant declined to waive retroactivity, the court summarily dismissed both of the defendant's motions pursuant to Practice Book § 25-34 (f). The plaintiff's counsel asked the court to delay the dismissal for a five minute recess to allow the defendant's counsel to discuss with the defendant waiving retroactivity so that the motions could go forward that day. Despite the assertion of the defendant's counsel that he did not need to discuss waiving retroactivity with his client, the court took a recess, again stating that if retroactivity were not waived, it would dismiss the motions.

Following a short recess, the defendant stated again that he would not waive retroactivity. The defendant also asserted that dismissal was improper because the plaintiff had not filed a written motion to dismiss, arguing that the plaintiff's oral motion denied him the opportunity to prepare a proper response. The court then vacated its dismissal of the motions and provided the parties with an opportunity to brief the issues and request additional oral argument.

On May 12, 2017, the plaintiff filed a motion, along with a supporting memorandum of law, seeking dismissal of the defendant's motion for modification of alimony and motion for contempt. In response, the defendant filed an objection to the motion to dismiss and an affidavit from Attorney Palmer.

On August 1, 2017, the parties appeared before the court for a hearing on the plaintiff's motion to dismiss.

At the hearing, the defendant was represented by Attorney Timothy McGuire and Attorney Palmer. After argument by both parties, the court informed the parties that it was reserving its decision on the motion to dismiss. On September 15, 2017, the court issued a written memorandum of decision,[6] in which it granted the plaintiff's motion to dismiss under Practice Book § 14-3 and denied the plaintiff's motion to dismiss under Practice Book § 25-34.[7] This appeal followed.

We begin our analysis of the defendant's claim that his motions should not have been dismissed with the relevant law and our standard of review. "Practice Book § 14-3 (a) permits a trial court to dismiss an action[8] with costs if a party fails to prosecute the action with reasonable diligence. The ultimate determination regarding a motion to dismiss for lack of diligence is within the sound discretion of the court. . . . Under [§ 14-3], the trial court is confronted with endless gradations of diligence, and in its sound discretion, the court must determine whether the party's diligence falls within the 'reasonable' section of the diligence spectrum. . . .

"We review the trial court's decision for abuse of discretion. . . . In determining whether a trial court abused its discretion, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . .

"A trial court properly exercises its discretion to dismiss for failure to prosecute [with reasonable diligence] if the case has been on the docket for an unduly protracted period or the court is satisfied from the record or otherwise that there is no real intent to prosecute . . . ." (Citations omitted; footnote added; internal quotation marks omitted.) *Bobbin* v. *Sail the Sounds, LLC*, 153 Conn. App. 716, 726–27, 107 A.3d 414 (2014), cert. denied, 315 Conn. 918, 107 A.3d 961 (2015).

"The court's discretion, however, is not unfettered; it is a legal discretion subject to review. . . . [D]iscretion imports something more than leeway in decision-making. . . . It means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) *Speer* v. *Dept. of Agriculture*, 183 Conn. App. 298, 303, 192 A.3d 489 (2018).

The purpose of Practice Book § 14-3 is to "ensure the proper movement of cases and to prevent a backlog of the docket" so as to avoid permitting cases to "drift aimlessly through the system." (Internal quotation marks omitted.) *Fuller* v. *Commissioner of Correction*,

75 Conn. App. 814, 818–19, 817 A.2d 1274, cert. denied, 263 Conn. 926, 823 A.2d 1217 (2003). The court has, consistent with these principles, established that "lengthy periods of inactivity by the plaintiff constitute sufficient grounds for a trial court to determine that the plaintiff has failed to prosecute an action with reasonable diligence." (Internal quotation marks omitted.) *Brochu* v. *Aesys Technologies*, 159 Conn. App. 584, 593, 123 A.3d 1236 (2015).

"The design of the rules of practice is both to facilitate business and to advance justice; they will be interpreted liberally in any case [in which] it shall be manifest that a strict adherence to them will work surprise or injustice. . . . Rules are a means to justice, and not an end in themselves." (Internal quotation marks omitted.) *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 16, 776 A.2d 1115 (2001).

Importantly, "[c]ourts must remain mindful . . . that [i]t is the policy of the law to bring about a trial on the merits of a dispute whenever possible . . . and that [o]ur practice does not favor the termination of proceedings without a determination of the merits of the controversy [if] that can be brought about with due regard to necessary rules of procedure. . . . *Disciplinary dismissals pursuant to Practice Book § 14-3, thus, are not favored* . . . ." (Citation omitted; emphasis added; internal quotation marks omitted.) *Bank of New York Mellon* v. *Horsey*, 182 Conn. App. 417, 429, 190 A.3d 105, cert. denied, 330 Conn. 928, 194 A.3d 1195 (2018).

Accordingly, "although dismissal of an action is not an abuse of discretion [if] a party shows a deliberate, contumacious or unwarranted disregard for the court's authority . . . the court should be reluctant to employ the sanction of dismissal except as a last resort . . . and [if] it would be the only reasonable remedy available to vindicate the legitimate interests of the other party and the court." (Citations omitted; internal quotation marks omitted.) *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 16–17.

Finally, even though a trial court has wide discretion in determining whether to dismiss an action for failure to prosecute it with due diligence, there are limits to this discretion. Importantly, sanctions imposed by the court must be *proportional* to the violation or misconduct. See id., 18; see also *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, 328 Conn. 60, 176 A.3d 1167 (2018) (holding that *Millbrook* proportionality test, which applied to sanctions involving violations of discovery order, applies to all sanctions). In *Ridgaway*, our Supreme Court reasoned, "[i]ndeed, we cannot imagine a circumstance under which it would *not* be an abuse of discretion to impose a sanction that is disproportionate to the misconduct." (Emphasis added.) *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, supra, 72.

Our Supreme Court has identified the following factors as relevant to determining the proportionality of a sanction: the nature and frequency of the misconduct, notice of the possibility of a sanction,[9] the availability of lesser sanctions, and the client's participation in or knowledge of the misconduct. Id., 73. Our Supreme Court also noted that these principles reflect that, in assessing proportionality, a trial court must consider the totality of the circumstances, including, most importantly, the nature of the conduct itself. Id., 76. We recognize that the *Millbrook* factors were established in the context of noncompliance with discovery orders, whereas the present case pertains to a failure to prosecute with due diligence pursuant to Practice Book § 14-3. Accordingly, we have adapted the factors to fit the circumstances of the present case.

With respect to the first factor, the nature and frequency of the misconduct, it is logical that particularly egregious or frequent misconduct, such as repeated refusals to comply with a court order, warrants more severe sanctions. See id., 73. The court in *Ridgaway*, however, also acknowledged that although our courts have not considered whether a single act of misconduct could warrant imposing a judgment of nonsuit or similar sanction, courts in other jurisdictions have concluded that a single act could warrant nonsuit or dismissal if the act is *sufficiently egregious*, particularly if the improper conduct involves the perpetration of a deception on the court. Id., 73–74.

The conduct for which the court imposed the sanction of dismissal in the present case was a onetime, one and one-half year delay that occurred after the defendant's counsel had been diagnosed with a serious illness. The defendant's counsel eventually transferred the case to another attorney, who appeared in court ready to prosecute the motions. There is no evidence in the record, nor does the plaintiff claim, that during the period of delay the defendant ever was ordered specifically by the court to prosecute more expeditiously the motions, let alone that the defendant disregarded such an order. Further, there is no suggestion by the plaintiff or the court that the delay in this matter involved the perpetration of a deception on the court.

With respect to the next factor—notice of the possibility of a sanction—our Supreme Court noted that in instances in which our appellate courts have upheld the sanction of a nonsuit, a significant factor has been that the trial court *put the plaintiff on notice* that noncompliance would result in a nonsuit. Id., 74. We acknowledge that Practice Book § 14-3 generally puts a party on notice of the possibility of dismissal for failure to prosecute an action with due diligence. Nevertheless, we find it relevant that, unlike in the cases described in *Ridgaway*, in which the court made various orders in which the party was explicitly informed

that failure to follow would result in nonsuit, here, the first time that the defendant was confronted with potential dismissal was at the hearing on the merits of the motion. Notably, this was a hearing in which *both parties were prepared to move forward*. There was nothing further the defendant needed to do to comply with § 14-3, as he was already willing and able to prosecute the motions that day.

Next, in evaluating the third factor, i.e., the availability of lesser sanctions, the court in *Ridgaway* noted that, "[our Supreme Court] has refused to uphold a sanction of nonsuit when there were available alternatives to dismissal that would have allowed a case to be heard on the merits while ensuring future compliance with court orders." Id., 75. As to this factor, in addition to citing Connecticut case law, the court in *Ridgaway* took note of other jurisdictions that similarly have reversed a sanction of nonsuit or dismissal when it had not been established that a lesser sanction would be inadequate to vindicate the interests of the other party and the trial court. Notably, the *Ridgaway* court cited to *McKoy* v. *McKoy*, 214 N.C. App. 551, 554, 714 S.E.2d 832 (2011), in which the court vacated the trial court's order dismissing a counterclaim for failure to prosecute because the trial court made no findings that lesser sanctions were considered and found inadequate. *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, supra, 328 Conn. 75. The court in *McKoy* noted that "involuntary dismissal of a claim is one of the harshest sanctions at a trial court's disposal, effectively extinguish[ing] the [party]'s cause of action and deny[ing] [the party] his [or her] day in court." (Internal quotation marks omitted.) *McKoy* v. *McKoy*, supra, 553. Similarly, here, the court made no findings in its memorandum of decision that it considered and found inadequate lesser sanctions before dismissing the motions for failure to prosecute.

As to the last factor, i.e., the client's participation in or knowledge of the misconduct, the court in *Ridgaway* stated that, "[w]hether the misconduct was solely attributable to counsel and not to the party also has been a factor in assessing whether a less severe sanction than a nonsuit or dismissal should have been ordered." *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, supra, 328 Conn. 75. In evaluating this factor, our Supreme Court cited to cases in which the degree of personal involvement of the client in the misconduct, was evaluated in determining proportionality. Id., 75–76; see *Herrick* v. *Monkey Farm Cafe, LLC*, 163 Conn. App. 45, 49–50, 53, 134 A.3d 643 (2016) (trial court abused its discretion in rendering judgment of nonsuit when attorney failed to timely pay attorney's fees of opposing parties); *EMM Enterprises Two, LLC* v. *Fromberg, Perlow and Kornik, P.A.*, 202 So. 3d 932, 934 (Fla. App. 2016) (before dismissal for fraud on court, factors to be considered include personal involvement of plaintiff); *Eaton Corp.* v. *Frisby*, 133 So. 3d 735, 759 (Miss. 2013) (dismissal

was proper exercise of court's discretion when plaintiff *knew*, through its corporate officers, that counsel had engaged in improper ex parte communication with judge). Here, the delay in prosecuting the motions was due to the illness of the defendant's attorney, which fell well outside the control and personal involvement of the client, and thus tends not to justify the severe sanction of dismissal.

Finally, because a trial court must consider the totality of the circumstances, we evaluate the *Ridgaway* factors in light of the prejudice to the plaintiff in the present case. *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, supra, 328 Conn. 76. The plaintiff argued that the defendant's delay prejudiced her by the potential retroactivity of the motion for modification of alimony.[10] Specifically, she argued that if the modification of alimony were to apply retroactively, she would have exposure to pay back the difference in alimony for the four and a half years that had passed since the motion was originally filed. Therefore, she would be at risk to pay back a large sum of money.

Dismissal, however, was not the only remedy available to ameliorate the plaintiff's retroactivity concern. Rather, the court could have addressed the issue as part of its adjudication of the merits of the motion for modification. For example, the trial court could have granted the defendant's motion to modify alimony prospectively, but denied the retroactive application of the order. See *Hane* v. *Hane*, 158 Conn. App. 167, 176, 118 A.3d 685 (2015) (there is no "bright line test for determining retroactivity" of modification to alimony or child support; instead, trial court is to consider factors applicable given facts and circumstances of case, and may consider length of time period to adjudicate motion for modification). Moreover, if the court concluded that retroactive modification of alimony was appropriate, it could have crafted a repayment plan that could have allowed the plaintiff to pay back the defendant over time. Therefore, for the reasons stated previously, it was improper for the trial court to dismiss the defendant's motions without a hearing on the merits.

In addition to dismissal being a disproportionate sanction, the present case is distinguishable from cases in which dismissal under Practice Book § 14-3 was found to be proper. A brief discussion of some of these cases illustrates this point. For example, in *Ill* v. *Manzo-Ill*, 166 Conn. App. 809, 142 A.3d 1176 (2016), the defendant appealed from the judgment of the trial court dismissing, pursuant to Practice Book §§ 25-34 (e) and 14-3, her postdissolution motion to modify her alimony award. Id., 817–19. The defendant filed her motion for modification of alimony on April 6, 2010. Id., 813. On February 22, 2012, almost two years after the defendant had filed her motion for modification, the plaintiff moved to dismiss the defendant's motion on the

grounds that (1) the defendant had not prosecuted her motion with reasonable diligence pursuant to § 14-3 and (2) had failed to reclaim it within three months from its filing date pursuant to § 25-34 (e).[11] Id., 815. The defendant filed an objection to the plaintiff's motion to dismiss, which the court sustained. Id., 815–16. After the court's ruling, the defendant took some steps to pursue discovery. Id., 816. Despite initiating efforts to take numerous depositions throughout the pendency of her motion, however, the defendant admitted that she never took a single deposition. Id., 817.

After the passage of another year and ten months, on December 26, 2013, the plaintiff in *Ill* filed a second motion to dismiss the defendant's motion for modification pursuant to Practice Book §§ 14-3, 25-34 (e), and 25-48. Id., 817. On February 19, 2014, the defendant filed an objection to the plaintiff's motion to dismiss. Id., 818. The court subsequently heard oral argument on the motion to dismiss, which it granted on May 14, 2014. Id.

In affirming the judgment of dismissal pursuant to Practice Book § 14-3, this court concluded that the defendant's inactivity for extended time periods and her repeated failure to complete noticed depositions supported the dismissal. Id., 827–30. This court emphasized that, even after the trial court denied the plaintiff's first motion to dismiss and informed the defendant of her duty to ensure the progress of her motion to modify, she "did not accelerate or streamline her scattered and imprecise discovery efforts . . . ignored the court's direction to obtain a hearing date and never sought a scheduling order . . . ." Id. 830. Further, although the defendant argued that her delay was justified due to the plaintiff's appeal of the original alimony order and failure to provide discovery in good faith, this court disagreed stating that it was not evident how the plaintiff's appeal, which was withdrawn in 2010, "would have affected her ability to proceed efficiently for the next three and one-half years" and rejected the defendant's claim that the plaintiff had engaged in bad faith delay tactics regarding discovery. Id., 827.

In *Brochu* v. *Aesys Technologies*, supra, 159 Conn. App. 586–87, this court found that an unjustified delay of more than four years in substituting a representative of the decedent's estate as the party plaintiff supported the trial court's dismissal of the action for failure to prosecute with due diligence pursuant to Practice Book § 14-3. In affirming the dismissal, this court emphasized that the plaintiff *never* provided the court with a compelling reason for her failure to substitute herself in, despite having years in which to have done so, and failed to provide a reason on appeal. Id., 592. This court in *Fuller* v. *Commissioner of Correction*, supra, 75 Conn. App. 815, affirmed the dismissal, pursuant to § 14-3, of the petitioner's petitions for a writ of habeas corpus

and a new trial because the petitioner had engaged in various delay tactics, requested an indefinite postponement of her trial, was unable to proceed with trial when asked by the court to call her first witness, and, after the court postponed the trial to the following day, was again unable to proceed. Id., 815–19. Finally, in *Bobbin* v. *Sail the Sounds LLC*, supra, 153 Conn. App. 728–29, this court affirmed the trial court's dismissal, pursuant to § 14-3, of the plaintiff's application to compel arbitration where the plaintiff engaged in minimal activity on the case for almost four years.

The present case is readily distinguishable from *Ill*, *Brochu*, *Fuller*, and *Bobbin*. Here, the case had not "drift[ed] aimlessly through the system." See *Brochu* v. *Aesys Technologies*, supra, 159 Conn. App. 593. The defendant provided a compelling reason for the delay, both parties were fully prepared to move forward with a trial on the merits of the motions, and the defendant never received, let alone ignored, orders from the court regarding the motions. Here, a single, one and one-half year period of inactivity from June, 2015, to December, 2016, occurred. Directly before this period of inactivity, the defendant's counsel had been diagnosed with Parkinson's disease, and was attempting to organize his practice accordingly. The plaintiff never seriously disputed that the defendant's counsel suffered from significant health issues, or that he had taken efforts to inform the courts in which he was practicing that there could be delays in prosecuting his cases.[12]

Finally, we are concerned that the court's decision to dismiss the defendant's motions creates an appearance that it was punishment for the defendant's refusal to waive a claim that any reduction in alimony should be retroactive to the date that the motion for modification of alimony was filed.

This court has recognized, in the context of settlement discussions, that "[w]hen . . . a judge engages in [discussions] looking to the settlement of a case . . . in which he will be called upon to decide the issues of liability and damages . . . [i]t is . . . impossible to avoid questions as to whether the judge can disregard . . . matters disclosed in the conference . . . and whether a preliminary judgment, formed at the conference and predicated on unsubstantiated claims of proof, may have some subtle influence on a final judgment after a full hearing. . . . It is inevitable that the basis is laid for suspicion, no matter how unfounded or unjustified it may be, and that failure to concur in what the judge may consider an adequate settlement may result in the imposition, upon a litigant or his counsel, of some retributive sanction or the incurrence of judicial displeasure." (Internal quotation marks omitted.) *Carvalhos Masonry, LLC* v. *S & L Variety Contractors, LLC*, 180 Conn. App. 237, 240–41, 183 A.3d 697 (2018).

We find the same concerns to exist in the present

case. At the initial hearing on the defendant's motions, the court asked if the defendant would waive retroactivity with respect to the motion for modification and when he refused, it immediately granted the plaintiff's motion to dismiss his motions. The following colloquy occurred:

"The Court: The position of counsel for the plaintiff is that he's willing to waive the provision of [Practice Book §] 25-34 subsection F if there's no retroactivity. Are you asking for retroactivity in the event I enter a modified order?

"[The Defendant's Counsel]: We are, Your Honor, however I don't think that . . . is something that could be waived or granted at the outset of a trial. I think that's something for the finder of fact to determine, and certainly that is a factor for the finder of fact to consider when determining whether or not to award retroactivity.

"The Court: Parties can always waive retroactivity if they want to waive it. My question is are you waiving retroactivity in the event I grant your motion to modify?

"[The Defendant's Counsel]: No, Your Honor.

"The Court: Pardon me?

"[The Defendant's Counsel]: No, Your Honor.

"The Court: All motions are off for failure to comply with [§] 25-34 subsection F. They'll have to all be refiled."

After the court dismissed the defendant's motions, the plaintiff requested a recess for the defendant's counsel to discuss with the defendant waiving retroactivity. The court stated in response to the request of the plaintiff's counsel, "I'll give them that opportunity. Otherwise, my order of dismissal will remain in effect and if anyone wants to be heard on any motions, they'll have to refile them. . . . I already told you what the order's going to be *if there's no waiver*; I'm going to enforce the Practice Book Rule." (Emphasis added.)

In this context, the court's decision to dismiss the defendant's motions gives rise to an appearance that dismissal was in retaliation for the defendant's decision to decline the plaintiff's request that he waive retroactivity. The fact that the court ultimately withdrew its ruling dismissing the motions pursuant to Practice Book § 25-34 (f) and allowed the parties the opportunity to brief and argue the motion to dismiss does not negate fully the appearance that the dismissal was punitive in nature. A trial court cannot attempt to force a party to engage in horse trading and then punish them when they decline to do so.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

[1] Practice Book § 14-3 is made applicable to family matters by Practice Book § 25-48 and provides in relevant part: "(a) If a party shall fail to prosecute an action with reasonable diligence, the judicial authority may, after hearing, on motion by any party to the action pursuant to Section 11-1, or on its own motion, render a judgment dismissing the action with costs. . . ."

[2] The parties' separation agreement provided in relevant part:

"ARTICLE II – ALIMONY AND SUPPORT

"2.1. The [h]usband shall pay, during his lifetime, to the wife until her remarriage or death, whichever first occurs, the following allowances as alimony and support for the [w]ife and children:

"A. On the first day of the first month following the date of this agreement, and on the first day of each succeeding month until the house located at 121 Cedar Lane, Ridgefield, Connecticut is sold the sum of $4,600.00, and, after the house is sold, the sum of $2,850.00. The obligations of the [h]usband under this sub-paragraph A. shall be suspended during any period of more than 60 consecutive days in which the [w]ife cohabits with a person of the opposite sex.

"B. The monthly payments to be made by the [h]usband to the [w]ife pursuant to subparagraph A. above shall be reduced by the sum of ($650.00) [d]ollars when the minor child (a) marries, (b) dies, (c) attains the age of eighteen (18) years, or (d) becomes emancipated or lives with the [h]usband.
* * *
"ARTICLE III – WAIVER OF ALIMONY
* * *
"3.2 In the event the [w]ife becomes gainfully employed, by any employer other than Upneumat International, Inc., the [h]usband shall be entitled to a credit of 25 [percent] of the [w]ife's salary over and above the first $250.00 per month averaged over a full year's period, as against the amount of alimony due by [h]usband to [w]ife. The [w]ife shall annually provide the [h]usband with copies of any W-2 forms issued to her and her federal income tax return. The term "salary" used herein shall be deemed to include income received by the [w]ife from [s]ocial [s]ecurity, [p]ension and [p]rofit [s]haring [p]lan whether or not she is gainfully employed at the time of such receipt."

[3] On March 15, 2013, the plaintiff filed a motion for contempt regarding nonpayment of alimony. No action was taken on the plaintiff's motion.

[4] The plaintiff instituted a separate action in the Superior Court of California seeking to enforce the Connecticut spousal support order and to collect outstanding spousal support from the defendant. On October 23, 2001, the parties stipulated, and the California court ordered, that "[b]eginning on August 1, 2001, [the defendant] shall pay $1,741.76 per month to [the plaintiff] as ongoing current spousal support on the [first] day of the month for which it is due."

In his motion in limine, the defendant moved to preclude the plaintiff from offering into evidence any testimony or documents to vary or contradict the terms of paragraph 3.2 of the parties' separation agreement; see footnote 2 of this opinion; or to vary or contradict the terms of the parties' October 23, 2001 stipulation and order of the Superior Court of California.

[5] Practice Book § 25-34 (f) provides: "Failure to appear and present argument on the date set by the judicial authority shall constitute a waiver of the right to argue unless the judicial authority orders otherwise. Unless for good cause shown, no motion may be reclaimed after a period of three months from the date of filing. This subsection shall not apply to those motions where counsel appeared on the date set by the judicial authority and entered into a scheduling order for discovery, depositions and a date certain for hearing."

[6] The trial court's memorandum of decision contains minimal analysis of the parties' claims. Further, the memorandum mostly is comprised of quoted material from the parties' memoranda of law, as well as the borrowing of headings from various pleadings.

[7] Specifically, the court held that Practice Book § 25-34 (f) did not apply because counsel appeared on the date set for hearing and the plaintiff failed to file her motion to dismiss under § 25-34 (f) prior to the hearing date. Section 25-34 (f) expressly states that it is inapplicable to those motions in which counsel appeared on the date set by the judicial authority and entered into a scheduling order for discovery, depositions and a date certain for hearing. See footnote 5 of this opinion.

[8] "[T]he word action means the lawful demand of one's right in a court of justice . . . . It includes not only the usual civil action instituted by process but also proceedings initiated by . . . motion." (Internal quotation

marks omitted.) *Ill* v. *Manzo-Ill*, 166 Conn. App. 809, 824, 142 A.3d 1176 (2016).

[9] Although our Supreme Court in *Ridgaway* addressed whether a judgment of nonsuit was a proportionate sanction, whereas in the present case we consider whether dismissal of the defendant's motions was an appropriate sanction, for our purposes, we find that these sanctions are equivalent in that both fully dispose of the action at issue, and, therefore, we analyze the same factors in the present case. See *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, supra, 328 Conn. 60.

[10] At the hearing on the defendant's motions on April 20, 2017, the plaintiff's counsel stated, "I am glad to go forward today if the sanction for the nonprosecution of the motion or the order is that; that there will be no retroactivity and we're going forward. I am prepared, Your Honor."

Further, at the August 1, 2017 hearing on the plaintiff's motion to dismiss the defendant's motions, the plaintiff's counsel again argued that he could not have his client subjected to the retroactivity risk on the motion for modification of alimony. The plaintiff's counsel stated, "if retroactiv[ity] is gone, which was my initial plan, then *my client's not prejudiced.*" (Emphasis added.)

[11] When Practice Book § 25-34 was amended in 2016, effective January 1, 2017, subsection (e) was redesignated as subsection (f).

[12] The plaintiff objected to affidavit of the defendant's counsel, in which counsel described his illness and the steps he took after his diagnosis in order to inform the courts of how his illness would delay the progress of his cases. Although the plaintiff's counsel objected as to the effect that the illness of the defendant's counsel had on his ability to work, he did not seriously object to the fact that the defendant's counsel was in fact diagnosed with Parkinson's disease, or argue that counsel was not truthful in his representation to the court that he had spoken with the various courts in which he was working regarding his illness.

The trial court ultimately indicated that it was not persuaded that the affidavit properly was before the court under Practice Book § 25-13 because, unlike in the present case, that section applies only if the grounds for the motion to dismiss concern defects in jurisdiction, venue and process. Despite that conclusion, the trial court in its memorandum of decision recognized the illness of the defendant's counsel and made reference to information from his affidavit. Namely, the court referenced that the defendant's counsel met with judges whom he had cases before in order to apprise them of his illness.

We also note that, even when not under oath, "[a]ttorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath." (Internal quotation marks omitted.) *State* v. *Webb*, 238 Conn. 389, 420, 680 A.2d 147 (1996); Rules of Professional Conduct 3.3.